384 So.2d 692 (1980)
R.B.S., a Juvenile, Petitioner,
v.
Doris CAPRI, Director of Dade County Juvenile Detention Center, Respondent.
No. 80-817
District Court of Appeal of Florida, Third District.
May 27, 1980.
*693 Bennett H. Brummer, Public Defender and Alan R. Dakan, Asst. Public Defender, Miami, for petitioner.
Janet Reno, State's Atty. and Diane Kuker, Asst. State's Atty., Miami, and Bruce H. Lehr, Legal Intern, for respondent.
Before HUBBART, SCHWARTZ and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
On April 24, 1980, this court, upon hearing argument on the juvenile's petition for writ of habeas corpus and the State's response, granted the writ and directed the respondent to forthwith release the petitioner from custody.[1] The petitioner's release has already been effected by the granting of the writ of habeas corpus and no further can be accomplished for him by our memorializing the reasons for our action. We are, however, sufficiently disturbed by the trial court's disregard of the plain dictates of the Florida Juvenile Justice Act[2] and sufficiently convinced that this disregard is capable of repetition that we deem this opinion necessary.[3]
The petitioner (hereinafter the child) was charged with manslaughter and taken into custody at 2:40 p.m. on Monday, March 24, 1980. Two days later, on March 26, 1980, the State filed a petition for delinquency, *694 and the child was, for the first time, brought before the court. At the conclusion of this hearing, the family division judge entered a written order that the child "shall remain detained as previously ordered." There was, however, no previous court order respecting detention.[4]
Presumably, one of the purposes of convening on March 26 was to conduct the detention hearing mandated by Section 39.032(2), Florida Statutes (1979):
"... A child who is charged with a violation of law and is detained under this subsection shall be given a detention hearing within 48 hours of his being taken into custody, excluding Sundays and legal holidays, to determine the need for continued detention. The circuit court ... shall hold the detention hearing... ." (emphasis supplied).
The requirements of the statute are not satisfied, however, by the mere holding of a hearing. Section 39.032(5)(a) provides:
"No child shall be held in detention or shelter care longer than 48 hours, excluding Sundays or legal holidays, unless an order is entered by the court after a detention hearing finding that detention care or a crisis home is required based on the criteria in subsection (2). The order shall state the reasons for such findings of the court. The order shall be reviewable by appeal pursuant to s. 39.14 and the Florida Appellate Rules."
The criteria referred to in the above-quoted section are:
"Unless ordered by the court, a child taken into custody shall not be placed or retained in detention care prior to the court's disposition unless detention or a crisis home is required:
"(a) To protect the person or property of others or of the child;
"(b) Because the child has no parent, guardian, responsible adult relative, or other adult approved by the court able to provide supervision and care for him. If a child is to be detained pursuant to this paragraph alone, a crisis home only may be used;
"(c) To secure his presence at the next hearing;
"(d) Because the child has been twice previously adjudicated to have committed a delinquent act and has been charged with a third subsequent delinquent act which would constitute a felony if the child were an adult; or
"(e) To hold for another jurisdiction a delinquent child escapee or an absconder from probation, a community control program, or parole supervision of a child who is wanted by another jurisdiction for an offense which, if committed by an adult, would be a violation of law".
[§ 39.032(2), Fla. Stat. (1979)].
As of 2:40 p.m. on March 26, 1980, no order in compliance with Section 39.032(5)(a) having been entered, the child was entitled to be released from custody. His counsel, however, sought no review and his right to release remained inchoate.
On the morning of April 9, the child's next appearance in court, the State's request that the court waive juvenile jurisdiction was denied. That same afternoon, after sixteen days of detention, appointed *695 counsel moved for the child's release from detention.[5] It is apparent from the transcript of this hearing that all concerned overlooked that as of the time of this hearing the child had already been illegally detained for fourteen days.[6] But since he was still detained, and since the proscription contained in Section 39.032(5)(a) is not self-executing, the court would have been acting within its authority on April 9 to enter a valid detention order complying with Section 39.032(5)(a) and thereby render moot, for habeas corpus purposes, the prior illegal detention. This the court did not do. Instead the court continued the child's detention, ordering that he be further held in "non-secure."[7] The following colloquy contains the only reason given by the court for its ruling:
"MR. RYAN [prosecutor]: We have no objection to the straight release to the parent. Decision was made not to bind him over by Judge Perry.
"THE COURT: It is a serious charge.
"MS. COHEN [public defender]: Serious charge, Your Honor, but this is a really exceptional young man.
"THE COURT: Exceptional young man charged with manslaughter.
"MS. COHEN: I don't 
"THE COURT: Somebody died because of this."
On the following day, April 10, the public defender once again moved for the release of the child.[8] The court's response was the same:
"THE COURT: I think you should make this motion again on Monday when the 21 days are over. I am not going to release at this time. This is a very serious case. Somebody was killed in this situation. I am just not going to release him until the 21 days are over. At that time if you want to make a motion then you make your motion. I cannot release him at this time  I will not."
The court's reference to 21 days was a reference to Section 39.032(5)(c), Florida Statutes (1979), which provides:
"No child shall be held in detention care ... under a special detention order for more than 21 days unless an adjudicatory hearing for the case has been commenced by the court."
Of course, the right to hold a child in detention for 21 days presupposes a valid detention order ab initio. None existed.
On April 14, 1980, "the 21 days were over"; however, the illegal detention of the child was not. On that date the State moved for a continuance of the adjudicatory hearing and for the continued detention of the child.[9] The litany was repeated:
"... the only thing I know is that the State has come up here and told me that he killed somebody. That is what I know at this time, and they are charging him with that, and you are asking me to release him at this time. It is a very serious charge, it is a manslaughter case, and I don't think he should be out, to tell you the truth, on a manslaughter case."
The court set over the adjudicatory hearing to May 1, 1980, and continued the child's detention. With that, the child sought relief in this court.
*696 The State's response to the petition for writ of habeas corpus was that on April 9, 1980, the detention of the child was legalized and the statutory criteria met when the family division judge stated in open court that the basis for his decision not to release the child was because the charge was manslaughter. We reject this argument for two reasons.
First, Section 39.032(5)(a) mandates that the order entered "state the reasons for such findings of the court." The written order entered by the trial judge contained neither a finding nor reasons. Where a statute requires a written order giving findings and reasons, the transcript of the proceedings upon which the order was based cannot act as a substitute.
The requirement of the written order is consistently found in rules and statutes pertaining to bail.[10]See Fla.R.Crim.P. 3.691(b); 18 U.S.C. § 3146(d) (1966); Fed.R. App.P. 9(a). In matters respecting the right to be free from detention, the written order is essential:[11]
"Even prior to the enactment of the Bail Reform Act, 18 U.S.C. § 3141 et seq. (Supp. III, 1965-1967), and the adoption of the Federal Rules of Appellate Procedure, which went into effect on July 1, 1968, it had been clearly enunciated that a District Judge in denying a motion for release pending appeal should state in writing his reasons for such an action. This requirement has now been explicitly reiterated by the Appellate Rules. Fed. R.App.P. 9. In both pretrial and postconviction requests for bail, Rule 9 requires that, upon a denial of release or the imposition of conditions of release, the District Court `shall state in writing the reasons for the action taken.' The Advisory Committee's Note to Rule 9 makes it clear that this requirement is no minor technicality.
"The District Judge's reasoning must be delineated both out of fairness to the appellant and as an aid to this court in its role in bail administration. Application for release must generally first be made to the District Court, and we ordinarily give deference to the District Judge's decision. If no reason for that action is given, it `cannot be accorded the weight it would otherwise merit.'" Weaver v. United States, 405 F.2d 353, 354 (D.C. Cir.1968).
Accord, United States v. Thompson, 452 F.2d 1333 (D.C. Cir.1971), cert. denied, 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972); see also United States v. Briggs, 476 F.2d 947 (5th Cir.1973), and United States v. Briggs, 472 F.2d 1229 (5th Cir.1973). The right to an effective appeal from an adverse bail order includes the right to know what one is appealing from. McCormack v. State, 338 So.2d 208 (Fla. 4th DCA 1975); United State v. Thompson, supra. It is only from the written order that an appeal can be taken. Sparks v. State, 262 So.2d 251 (Fla. 4th DCA 1972). The purpose of the requirement that the trial court clearly and categorically state reasons for denying bail is so that a reviewing court may be fully advised regarding the basis for the trial court's action. United States v. Manarite, 430 F.2d 656 (2d Cir.1970). While one court has held that an opinion setting forth findings and reasons dictated in the record is sufficient compliance with the written order requirement, it cautioned that an extensive colloquy in the transcript which contained neither definite findings nor reasons was not sufficient. See United States v. Manarite, supra; see also United States v. Fields, 466 F.2d 119 (2d Cir.1972). It is not the function of an appellate court to cull the underlying record in an effort to *697 locate findings and underlying reasons which would support the order. The statute should be complied with in the future.[12]
Since the entire record is before us and the trial court so clearly stated in the record his reason for denial of release from detention, we are prepared to reject the State's response for a second reason.[13] The stated basis for the court's denial of release was the fact that the child was accused of manslaughter. That stated reason does not constitute a finding meeting any of the criteria for detention set forth in Section 39.032(2).[14] Inasmuch as the seriousness and nature of the offense are specified criteria in other sections of Chapter 39, see, e.g., Sections 39.09(2)(c), 39.09(3)(d), and 39.111(6)(c), we are constrained to conclude that the Legislature deliberately omitted this factor as one of the criteria to justify detention of a child.[15]
One of the stated purposes of the Florida Juvenile Justice Act is:
"To preserve and strengthen the child's family ties whenever possible, removing him from the custody of his parents only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal; . ." § 39.001(2)(c), Fla. Stat. (1979).
That purpose was not served in the present case.
For the foregoing reasons, we have granted the writ of habeas corpus.
NOTES
[1] One week earlier, upon receipt of the petition, we ordered the provisional release of the petitioner pending the State's response and the argument to be held.
[2] Chapter 39, Florida Statutes (1979).
[3] In C.L.B. v. Jones, 381 So.2d 1178 (Fla. 1st DCA 1980), the court, in the analogous situation of an attack upon a post-commitment detention of a delinquent child under Section 959.15, Florida Statutes (1979), concluded that although the issues were then moot, an opinion dealing with the merits was warranted, since at stake was the fundamental right to liberty and procedures which were subject to repetition.
[4] The written order reflecting the results of the child's first appearance on March 26 is a printed form obviously designed to expedite the work of the trial judge. Insofar as is pertinent here, it contains two possible orders respecting custody, the entry of either to be signified by a check mark. The first alternative is "that the child is released" pending further hearing. The second alternative, checked in the present case by the family division judge, is that the child "shall remain detained as previously ordered pending further order of the court... ."

As will be seen, infra, the use of this form order is inappropriate unless the findings supporting detention, and the reasons for such findings, required by Section 39.032(5)(a), Florida Statutes, have in fact previously been made by a court. While Section 39.032(5)(b) vests the intake officer, in the absence of a court order, with authority to detain the child during the first 48-hour period based upon the criteria of Section 39.032(2), upon the expiration of that period the court must act. The intake officer's ex parte decision to detain is not, in our view, "a previous order" which relieves the court from responsibility to conduct a detention hearing.
[5] This motion was unopposed by the State and supported by the intake officer.
[6] Undoubtedly the impetus for the motion for release was the court's ruling not to waive juvenile jurisdiction made earlier that day. There, is however, nothing in the statute that authorizes continued detention based on the pendency of the State's request to have the child bound over for trial as an adult.
[7] Non-secure custody may be provided in a detention home, see Section 39.01(16), Florida Statutes (1979), or in the child's own home, see Section 39.01(14), Florida Statutes (1979). That choice rests not with the court, but with the persons charged with the administration of the non-secure detention program. Since either would constitute detention, we need not concern ourselves with the distinction.
[8] The renewed motion was precipitated by the public defender learning of an administrative policy (apparently of the persons in charge of non-secure detention) not to accept a juvenile into "non-secure" within several days of the required adjudicatory hearing.
[9] See § 39.032(5)(e).
[10] While it is said that "... a child unlike an adult has a right `not to liberty but to custody'," Re Gault, 387 U.S. 1, 17, 87 S.Ct. 1428, 1438, 18 L.Ed.2d 527 (1967), the custody referred to is the custody of his parents, not the State. The right to be free from detention is the issue. Bail cases are apposite.
[11] Eastwood v. Hall, 258 So.2d 269 (Fla. 2d DCA 1972), holding that an open court stipulation to extend the speedy trial requirements satisfied the provision of the speedy trial rule calling for written stipulation, is inapposite. The written findings and reasons of a court denying bail have a purpose which is not satisfied by a review of a transcript.
[12] The present case was transferred from one family division judge to another after the detention hearing of March 26.

Had it been the practice of the court below to enter written orders, then the judge to whom the case was transferred would likely have taken note that the absence of a written order signified no detention findings had been made. Instead, the absence of a written order was apparently unremarkable, and the child's detention was allowed to continue.
[13] In United States v. Cramer, 451 F.2d 1198 (5th Cir.1971), the court stated that although a written order was required, since there were notations on the docket sheet which constituted findings and since the trial court orally announced its reasons behind them, it would proceed to the merits.
[14] The undisputed evidence revealed that the child's parents were capable of providing supervision and care for him; that there was no concern about future appearances in court; that the child had not been "twice previously adjudicated to have committed a delinquent act"; and that the child was not wanted by any other jurisdiction. Therefore, the only criterion under which the court arguably could have detained the child was in order "[t]o protect the person or property of others or of the child." See § 39.032(2)(a). The fact that one is accused of manslaughter does not, without more, give rise to an inference that his detention is required to protect others or himself.
[15] See also Fla.R.Crim.P. 3.130(4)(iii). The State's argument that the release of the child would be viewed by his peers and the community at large as demeaning the seriousness of the offense is, for the same reason, without merit. We need not address the State's argument that the court was justified in continuing the adjudicatory hearing and the detention beyond the statutory 21-day limit. The basis for that argument is that delay was justified by virtue of Section 39.032(e). Whether it was or not, detention must first be justified under Sections 39.032(2) and (5)(a).