478 So.2d 1054 (1985)
STATE of Florida, Petitioner,
v.
Alfred Floyd JACKSON, Respondent.
No. 65857.
Supreme Court of Florida.
October 17, 1985.
Rehearing Denied December 27, 1985.
Jim Smith, Atty. Gen., and Wallace E. Allbritton and Raymond L. Marky, Asst. Attys. Gen., Tallahassee, for petitioner.
Michael E. Allen, Public Defender and Michael J. Minerva, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for respondent.
OVERTON, Justice.
This is a petition to review Jackson v. State, 454 So.2d 691 (Fla. 1st DCA 1984), in *1055 which the district court held that the trial judge failed to properly set forth written reasons for departing from the sentencing guidelines and remanded to the trial judge with directions to apply the guidelines in effect on the date of the original sentencing proceeding. We find conflict with Brady v. State, 457 So.2d 544 (Fla. 2d DCA 1984), and Burke v. State, 456 So.2d 1245 (Fla. 5th DCA 1984).[1] We approve that part of the district court's decision directing a written order expressing reasons for departure, but we quash that part of the decision directing the trial court to use sentencing guidelines which were effective at the time of the original sentencing, rather than the current guidelines.
The respondent, Jackson, was convicted and placed on probation prior to the adoption of new sentencing guidelines. After the guidelines' effective date, Jackson's probation was revoked. The trial judge refused Jackson's request to be sentenced pursuant to the new guidelines and imposed a sentence that constituted a departure from the approved guidelines range. The trial judge commented that, even if sentence should have been according to the guidelines, he would "be of a mind to depart from the guidelines" because of Jackson's failure to comply with probation conditions.
First, as the state concedes, it was firmly established subsequent to Jackson's sentencing that he was entitled to be sentenced under the sentencing guidelines statutes and rules. State v. Boyett, 467 So.2d 997 (Fla. 1985). See also Duggar v. State, 446 So.2d 222 (Fla. 1st DCA 1984). These statutes and rules clearly mandate that a trial judge state in writing reasons for any departure from the guidelines. Section 921.001(6), Florida Statutes (1983), provides:
The sentencing guidelines shall provide that any sentences imposed outside the range recommended by the guidelines be explained in writing by the trial court judge.
(Emphasis added.) Florida Rule of Criminal Procedure 3.701(b)(6) states:
While the sentencing guidelines are designed to aid the judge in the sentencing decision and are not intended to usurp judicial discretion, departures from the presumptive sentences established in the guidelines shall be articulated in writing and made only for clear and convincing reasons.
(Emphasis added.) Finally, Florida Rule of Criminal Procedure 3.701(d)(11) requires that
[a]ny sentence outside of the guidelines must be accompanied by a written statement delineating the reasons for the departure.

(Emphasis added.) See also Hendrix v. State, 475 So.2d 1218 (Fla. 1985).
We reject the state's contention that a transcript of oral statements made by the judge during sentencing should be sufficient to justify departure from the guidelines. The necessity for written reasons for departure is explained by Judge Barkett in Boynton v. State, 473 So.2d 703 (Fla. 4th DCA 1985):
The alternative of allowing oral pronouncements to satisfy the requirement for a written statement is fraught with disadvantages which, in our judgment, compel the written reasons.
First, it is very possible ... that the "reasons for departure" plucked from the record by an appellate court might not have been the reasons chosen by the trial judge were he or she required to put them in writing. Much is said at hearings by many trial judges which is intentionally discarded by them after due consideration and is deliberately omitted in their written orders.
Second, an absence of written findings necessarily forces the appellate courts to delve through sometimes lengthy colloquies *1056 in expensive transcripts to search for the reasons utilized by the trial courts. In R.B.S. v. Capri, the court noted:
It is not the function of an appellate court to cull the underlying record in an effort to locate findings and underlying reasons which would support the order. The statute should be complied with in the future.
384 So.2d 692 at 696-697.
Lastly, the development of the law would best be served by requiring the precise and considered reasons which would be more likely to occur in a written statement than those tossed out orally in a dialogue at a hectic sentencing hearing. The efforts of the State of Florida to provide badly needed reforms in the sentencing aspect of the criminal justice system are in the embryonic stages. A mammoth effort has been expended by the Legislature and by the Sentencing Guidelines Commissions, past and present, to develop some uniformity and to respond to some of the major problems which surround the entire sentencing process. For the first time in this state, a body of law is being developed regarding considerations which may or may not be appropriate in sentencing criminal defendants. This effort would best be served by requiring the thoughtful effort which "a written statement providing clear and convincing reasons" would produce. This, in turn, should provide a more precise, thoughtful, and meaningful review which ultimately will result in the development of better law.
At 706-707. We adopt this reasoning as our own.
The legislature and this Court, by statute and rule, have clearly mandated written orders to assure effective appellate review. The reasons are well articulated by Judge Barkett.[2] To accept the state's interpretation would effectively change the rule and statute to mean that justification for a departure need only be found by an examination of the record. Such an interpretation was the intent of neither the legislature nor this Court in directing that any departure be explained in writing.
The second issue in this case concerns the guidelines to be used in resentencing. Citing the Fifth District Court of Appeal decision in Carter v. State, 452 So.2d 953 (Fla. 5th DCA 1984), for the proposition that an amendment to the guidelines cannot be applied retroactively, the district court concluded that Jackson was entitled to be sentenced under the guidelines in effect at the time the sentence was imposed. The state argues that the district court erred in so holding and contends that the current guidelines must be used in the resentencing process.
We agree with the state that the presumptive sentence established by the guidelines does not change the statutory limits of the sentence imposed for a particular offense. We conclude that a modification in the sentencing guidelines procedure, which changes how a probation violation should be counted in determining a presumptive sentence, is merely a procedural change, not requiring the application of the ex post facto doctrine. In Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), the United States Supreme Court upheld the imposition of a death sentence under a procedure adopted after the defendant committed the crime, reasoning that the procedure by which the penalty was being implemented, not the penalty itself, was changed. We reject Jackson's contention that Weaver v. Graham, 450 U.S. 24, *1057 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), should control in these circumstances.
For the reasons expressed, we approve in part and quash in part the decision of the district court. We direct the district court to remand to the trial court for sentencing under the guidelines in effect at the time of sentencing.
It is so ordered.
BOYD, C.J., and ADKINS and McDONALD, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
EHRLICH, Justice, concurring in part and dissenting in part.
I concur with my colleagues on the necessity of written reasons for departure. However, I dissent to the conclusion that ex post facto protection does not apply to changes in the sentencing guidelines. I believe Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), is directly applicable to this situation and dictates an outcome contrary to the majority's. While Weaver concerned a statutory change in gain time, I do not believe the distinction between statutory change and the guideline's change now before us is of any consequence constitutionally.[*]
The Supreme Court wrote in Weaver: "[T]wo critical elements must be present for a criminal or penal law to be ex post facto: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." 450 U.S. at 29, 101 S.Ct. at 964 (footnotes deleted). Appended to this sentence is a footnote which states, "We have also held that no ex post facto violation occurs if the change effected is merely procedural, and does `not increase the punishment nor change the ingredients of the offense or the ultimate acts necessary to establish guilt.' Alteration of a substantial right, however, is not merely procedural, even if the statute takes a seemingly procedural form." Id., n. 12 (citations deleted, emphasis added). The majority's reasoning seems to be that, because the maximum statutory sentence is not altered by the changes in the guidelines, the change does not "disadvantage the offender." However, there is disadvantage to the offender, i.e. the offender suffers "alteration of a substantial right."
Under the guidelines an offender may expect a certain range of sentence based on the guidelines and has an expectation of receiving a sentence within that range unless clear and convincing reasons exist to permit the judge to depart from the guidelines. The offender has the right to have those clear and convincing reasons stated in writing as the majority correctly holds. Thus, the average offender who commits a crime under circumstances where no clear and convincing reasons exist for departure has an expectation of being sentenced within the range provided for by the sentencing guidelines. Absent clear and convincing reasons, it is impermissible for the judge to depart from the guidelines, in effect guaranteeing the offender committing an "average" crime a sentence within the guideline range. There is thus a substantial right to receive a sentence within the range dictated by the guidelines and any alteration in the guidelines which permits a lengthier sentence alters a substantial right, in my opinion.
The majority relies on Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), for the principle that a change *1058 in the procedure by which a penalty is implemented does not change the "quantum of punishment." Just as the statutory change in gain time in Weaver altered the "quantum of punishment," 450 U.S. at 33, 97 S.Ct. at 966, so too, changes in the sentencing guidelines which result in lengthier presumptive sentences alter the "quantum of punishment."
I fail to see the difference between a change in gain time provisions which results in a lengthier time in prison for an offender in Weaver, and a change in sentencing guidelines which potentially lengthens the time in prison for an offender found guilty of a crime under circumstances where no clear and convincing reasons for departure exist. The majority's reasoning would be sounder if the guidelines merely provided the sentencing judge with a presumptive sentence from which he could deviate at his complete discretion. The requirement of clear and convincing reasons for departure raises the right to be sentenced within the discretionary range to the level of a substantial right, a right which is enforceable on appeal should the appellate tribunal determine there were inadequate clear and convincing reasons to justify departure.
The majority therefore has created a rule that will allow retrospective application of the guidelines when such will have a more onerous effect on offenders than the law in effect on the day of the offense, or, as in this case, the guidelines to which the offender would have a right to be sentenced under but for rejection of the ex post facto protection here.
SHAW, J., concurs.
NOTES
[1] We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. This cause was initially certified to us by the First District Court of Appeal as being in direct conflict with Harvey v. State, 450 So.2d 926 (Fla. 4th DCA 1984). The Fourth District Court of Appeal receded from its Harvey decision in Boynton v. State, 473 So.2d 703 (Fla. 4th DCA 1985).
[2] We have consistently enforced similar provisions. See Cave v. State, 445 So.2d 341 (Fla. 1984) (remanding to trial court for written findings for imposition of death penalty as required by § 921.141(3)1, Fla. Stat. (1981)); State v. Rhoden, 448 So.2d 1013 (Fla. 1984) (requiring the decision to impose adult sanctions on a juvenile to be in writing and subject to review in accordance with the provisions of §§ 39.111(6)(d) and 39.111(6)(j), Fla. Stat. (1981)). See also Fla.R.Civ.P. 1.530(f) (requiring trial judges to set forth specific reasons for granting a new trial and directing appellate court to relinquish jurisdiction whenever the trial judge fails to specify those grounds).
[*] The guidelines are not simply rules of this Court. Section 921.001(1) Florida Statutes (1983) expressly notes, in establishing the Sentencing Commission, that "[t]he provision of criminal penalties and of limitations upon the application of such penalties is a matter of predominately substantive law ... ." (Emphasis added.) The legislature proceeded to delegate its authority, much as it does in other administrative delegations, to effectuate substantive law. The guidelines thus have the same force and effect as if they had been statutorily enacted, and therefore the distinction between statutory alteration of gain time and alteration, by a delegated authority, of sentencing guidelines is untenable, insofar as the majority attempts to avoid application of Weaver.