481 So.2d 31 (1985)
Creed Martin VANOVER, Appellant,
v.
STATE of Florida, Appellee.
No. 84-2193.
District Court of Appeal of Florida, Second District.
December 11, 1985.
Rehearing Denied January 10, 1986.
James Marion Moorman, Public Defender, Bartow, and Allyn Giambalvo, Asst. Public Defender, Clearwater, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant was charged with two counts of aggravated battery. A jury found appellant not guilty as to Count I and guilty as to Count II. The presumptive range recommended pursuant to the sentencing guidelines was community control or twelve to thirty months incarceration. The trial court departed from the guidelines and sentenced appellant to ten years imprisonment with 122 days credit for time served. The three-year minimum mandatory for aggravated battery with a firearm was imposed.
On appeal, appellant challenges the sentence contending that the trial court's departure from the recommended guidelines was not based on valid, clear and convincing reasons. We affirm.
The court's reasons for departure, as set forth in a separate written order that complies *32 with State v. Jackson, 478 So.2d 1054, (Fla. 1985), were as follows:
1. The charge of Aggravated Battery with a Firearm requires a minimum mandatory sentence of at least three years in the Department of Corrections.
2. The offense of shooting Kim Carevic was done without any moral or legal justification.
3. The defendant intended to murder Kim Carevic, and it was only by a stroke of luck that Kim Carevic avoided being murdered.
4. The manner of the shooting of Kim Carevic, being at close range and at the body of the victim, created a great risk of serious bodily harm and/or death to the victim.
5. This was a particularly aggravated set of circumstances which sets this case far and above the average Aggravated Battery.
We recognize that the court's stated reasons do not contain detailed facts which support those reasons, but we do not construe Jackson as prohibiting us from going to the record to flesh out the factual support to better ascertain the sufficiency of the reasons given. It was for the purpose of determining the particulars of the aggravated circumstance of severe victim injury and danger to life that we felt it appropriate to refer to the record. See Smith v. State, 454 So.2d 90 (Fla. 2d DCA 1984). The record reveals that appellant was charged with aggravated battery with a firearm against two brothers, Ken and Kim Carevic. As the trial judge noted, for inexplicable reasons, the jury found appellant not guilty of the aggravated battery against Ken Carevic and guilty of the aggravated battery against Kim Carevic. The court, in the sentencing hearing, carefully reviewed the evidence and the extraordinary events surrounding the charges. While he specifically recognizes that he cannot consider the charge for which appellant was acquitted, he likewise cannot ignore the totality of the circumstances surrounding the aggravated battery for which he was convicted.[1]
*33 Neither do we consider that the supreme court, by its decision in Hendrix v. State, 475 So.2d 1218 (Fla. 1985), intended to eliminate the ability of a sentencing judge to depart from recommended guidelines based upon the severity of victim injury and the resulting danger to life, even though victim injury was factored into the recommended guidelines.
The nature and severity of victim injury has historically been one of the most salient and signal factors in determining the proper measure of punishment for crime. It is a factor that, by its very nature, is so subjective that any attempt to evaluate it solely by an objective standard renders it impotent in the sentencing process. We, therefore, conclude that in providing for sentencing guidelines by statute, rule and decisions, there was surely neither a legislative or judicial intent to eliminate the subjective evaluation of victim injury by a sentencing judge merely because that circumstance was also objectively factored into the sentencing guidelines structure. If such a salient and signal factor is to be removed from the consideration of the sentencing judge in departing from recommended guideline sentences, we must conclude that there is virtually no reason for departure that will survive appellate scrutiny.
SCHEB, A.C.J., and HALL, J., concur.
NOTES
[1] The following are excerpts of the trial judge's comments that caused him to depart from the sentencing guidelines:

This is a rather difficult case really for the Court to decide with respect to an appropriate sentence. I will say, quite candidly, that the jury's verdict was interesting, to say the least. A man who received the most shot to the head that literally went down his mouth, and the bullet lodged at the back of his neck, is a most remarkable and miraculous event in the life of the victim, in that case, Kenneth Carevic.
I have never heard of a person swallowing a .38 bullet at point-blank range and literally surviving. To think that that bullet didn't ricochet inside the man's skull and make mush out of his brain, not sever an artery, not sever his spinal cord, and not even leave his neck, is almost a profound medical fact, but in any event, a jury found him not guilty, having shot Kenneth Carevic.
I suppose it was due to the confrontation aspects in accepting the defendant's argument, that he was somewhat put in fear. I remember he testified that the defendant  excuse me, the victim, Kenneth, moved up out of his chair and came toward him, when your client, the defendant in this case, was armed with a.38 pistol.
It would have seemed that your client had sufficient ability to stop an attack upon him with a gun, possibly, if he wanted to shoot  shoot someplace less dangerous, say, shoot him in the leg, foot. But since he testified that Kenneth Carevic invited a shot in the mouth, opened his mouth, and your client followed through with the invitation and shot him in the mouth is almost an incredible series of events.
I think the fact the jury found him not guilty is equally difficult to comprehend, but the Court has to go along with that verdict. That's the function of the jury. They had the right to make the decision. The [sic] obviously found for some reason or other that defendant did not use force in excess of what he was justifiably required to do, and brought back a not guilty verdict. I think the Court can take into consideration the fact that Ken [sic (Kim)] Carevic came out of the bathroom, as he testified, and was shot.
Here again, it was an almost miraculous event. If the bullet had passed through the man's body from the side, probably by maybe as much as an inch into his body rather than passing out through his back, might have got through his body and again it severed a vital artery; might even have punctured the heart.
With a .38 bullet doing as much damage as it did to the body of these men, they both survived. Certainly, as I have said, an almost miraculous event.
I have no doubt the defendant, Creed Vanover, intended to kill both of these brothers. He didn't fire a warning shot, and as Kim testified, he heard a shot, didn't even believe what had transpired when he looked at his own brother and saw blood coming out of his mouth and saw his brother jump up and run out of the room. I suppose the jury felt that Kim, walking into this unbelievable scene, and apparently not participating in any acts toward the defendant, was merely shot. Justified in their eyes, to believe he was guilty of this aggravated battery, and they found him guilty.
I agree with the State. Under normal circumstances, he would be standing in the Court on a murder charge, either first or second degree, except, fortunately for these victims and fortunately for the defendant, the shots were not fatal. This is a second degree felony calling for a sentence of 15 years. Are we bound by the guidelines?
... .
Well, I'm somewhat, as I said, disturbed by the overall circumstances in the commission of this crime. I have to also take into consideration that all three of these men were sitting drinking. I don't know how much that contributed to this situation. I don't think there's a high element of intoxication involved.
I have to also take into the consideration the fact that the defendant  apparently the defendant has only been through the sixth grade, which is distressing. Sometimes people lack formal education but have good sense otherwise. Formal education give [sic] anybody intelligence. Merely equips an otherwise intelligent man with an opportunity to improve on it. Intelligence doesn't impose intelligence where none exists. Otherwise, I can't say the defendant, lacking a formal education, is not an intelligent man.
I feel, as I said, he did create great risk of injury and possible death to both of these men.
What is also perplexing is that there were two victims, both of whom were shot under the same circumstances. No doubt, the defendant used an armed weapon ... without warning against both of these men. Only legal justification he gave at the trial was the fact that he had $1300 in his dresser drawer from the sale of his truck, and he was apprehensive these men were going to possibly overcome or overwhelm him and take his money... . Maybe that's sufficient motive to almost blow both of these men away, but in any event, that was his only motive, was that he feared, basically, they would take his money.
... .
Kim, whichever, when he came out of the bathroom, apparently was not involved in the fracas at all.
... .
The scene here that took place was very unusual, and I think the Court has to take that into consideration. So, I am going to go outside the guidelines for all the reasons that I have said, and it's a difficult case, I recognize that, and I appreciate the fact that this man has absolutely no prior criminal record.
... .
All of this combines to a rather unfortunate and ugly situation. I do not feel that I can give him just the minimum mandatory because that would, in effect, be just a slap on the wrist, saying the Court has no choice but to just follow the minimum mandatory.
Under all of these circumstances, I think that would be rather shocking to this Court's conscience in view of all the facts of the case, and especially in view of what I said, I think this man really intended to murder both of these brothers. The fact that they survived is a miracle.