W. SHARP, Judge.
Sanders appeals from the trial court’s denial of his motion to correct an illegal sentence brought pursuant to Florida Rule of Criminal Procedure 3.800(a). After a careful consideration of the history of Sanders’ prior appeal and other related proceedings, the trial judge denied Sanders’ motion on substantive grounds, the time bar of Florida Rule of Criminal Procedure 3.850,[1] and the prior “law of this case.” We affirm.
This case has a long and unique history, which dictates the ultimate resolution of this proceeding. In July of 1986, Sanders was charged with Count I, armed robbery of Donald McClellan while carrying a firearm (a shotgun) and wearing a hood or mask;[2] Count II, aggravated assault on McClellan with a firearm (a shotgun) while wearing a hood or mask,[3] and Count III, unlawful display, use, and carrying a firearm (a shotgun) while committing a felony (armed robbery) while wearing a hood or mask.[4] Wearing a hood or mask while committing an offense enhances the degree of felony charged. § 775.0845, Fla. Stat.(1985). That statute provides:
The penalty for any criminal offense ... shall be increased as provided in this section if, while committing the offense, the offender was wearing a hood, mask, or other device that concealed his identity-
(1) A misdemeanor of the second degree shall be punishable as if it were a misdemeanor of the first degree.
(2) A misdemeanor of the first degree shall be punishable as if it were a felony of the third degree.
(3) A felony of the third degree shall be punishable as if it were a felony of the second degree.
(4) A felony of the second degree shall be punishable as if it were a felony of the first degree.
Sanders was convicted of all three crimes. The evidence at trial established that on November 5, 1985, McClellan, the manager of a Red Lobster Restaurant in *725 Orlando, arrived early in the morning to open for business. After he turned off the door alarm, he was confronted by a man wearing gloves and a ski mask, and carrying a shotgun. The man had apparently hidden overnight in the mens’ restroom. He said: “This is a robbery. I’m not kidding.”
Sanders marched McClellan and the other employees single file into the office. He directed McClellan to open the safe and place the cash into a bag. He warned McClellan against setting off any alarms. McClellan testified: “He pointed the gun at me and told me that if the police arrived, that he would blow my head off.”
Sanders then walked everyone to the back door. He apparently knew the layout of the restaurant, and about the restaurant’s alarm systems. He ordered the employees and McClellan into the freezer and told them not to come out for three minutes after he left. McClellan said the robber was not abusive, but appeared very much in control of the situation. Prudently, they obeyed his directions.
At the end of the trial on August 1,1986, Sanders dismissed his attorney. Without appointing a successor counsel, or conducting a Feretta hearing,[5] the trial judge sentenced Sanders to thirty years for armed robbery, fifteen years for aggravated assault, and thirty years for the firearm offense. These sentences were beyond the applicable guidelines range. The trial judge explained his departure orally on the record: The crimes had been carried out in a “professional” manner; and, after the events in this case occurred, Sanders had been convicted of other crimes (some involving a Red Lobster Restaurant). Those events took place prior to the events in this case, but could not be scored. And the judge perceived that there is little hope for Sanders’ rehabilitation.
On August 8, 1986, the trial judge held an amended sentencing at which he orally vacated the prior sentences and imposed identical sentences. At this hearing, Sanders was represented by counsel. The prosecutor had certified copies of Sanders prior convictions, and a new scoresheet was prepared based on those documents. Defense counsel and- Sanders both went over the scoresheet. Defense counsel said they thought it was “correct.”
The trial judge orally stated on the record reasons why he was imposing a departure sentence. They were: three prior felony convictions which were unscored because the convictions were obtained after commission of the crimes in this case, and the professional manner in which this crime was accomplished. But no written reasons were placed of record.
The case was appealed to this court. On December 9, 1986, the state attorney moved to relinquish jurisdiction so that the sentences could be “corrected.” Counsel pointed out that the trial court failed to place written reasons for departure in the record, and one offense was improperly designated a third degree rather than a first degree felony. This court granted the motion.
On January 14, 1987, the trial judge held a hearing to correct sentencing errors. Sanders was not present, but his public defender appeared. She objected to the fact that Sanders was not present. The trial judge explained he was merely correcting sentencing errors on remand, not resentencing.
The judge said he had timely dictated written reasons for departure to his secretary. She recalled typing them, but the document was misplaced and they could not find it. The court reviewed its reasons for departure: unscored crimes committed after the ones involved in this case; Sander’s lack of rehabilitation in view of “numerous probations” and punishments; and the professional manner in which this crime was committed. He said any one of those reasons would cause him to “depart” from the guidelines. He also corrected the mis-designation of the possession of a firearm charge from being a third degree felony to a first degree felony.
*726 Accordingly an amended judgment was entered on January 4, 1987, nunc pro tunc as of August 8, 1986. A written order giving reasons for a departure sentence was filed January 15, 1987, also nunc pro tunc to August 8, 1986. The order provides:
The court in sentencing the defendant, having departed from the Presumptive Guideline Sentence, sets forth as reasons for departure the following:
1.The professional manner in which the crime was carried out.
a. Placement of an automobile at the rear door of the restaurant to facilitate his escape.
b. Secreting himself above the ceiling in the restroom overnight.
c. Waiting until restaurant personnel arrived to deactivate burglar alarms.
d. Use of mask and gloves.
e. Defendant’s calm manner while carrying out the robbery.
2. Prior convictions for burglary, grand theft second degree and possession of burglary tools which were not scored in this scoresheet (those charges were pending at the time Defendant committed this robbery, the Defendant having skipped bond).
3. The Defendant has, since the age of 12 years, served probationary sentences and periods of incarceration both as a juvenile and an adult. In spite of the opportunity to gain an appreciation of the consequences of violating the law and to learn to conform to the law, Defendant continues to violate the law and his convictions demonstrate an excalating [sic] seriousness of crimes committed. The pattern of increasing seriousness of the crimes committed and the Defendant’s lack of response to punishment and probation manifested by his inability to remain at liberty without violating the law for even a moderate amount of time convince this Court that the Defendant is a career criminal with little likelihood of rehabilitation. The Defendant should be removed from society for the maximum period allowed by law.
The trial judge certified he had prepared a similar order within a “few days” of the August 8, 1986 sentencing but it had been misplaced. The only different or additional reason given in the written materials is the trial judge’s finding there was a pattern of increasing or escalating seriousness of crimes committed.
From there, the case proceeded back to this court for appellate review. Both the sentences and the convictions were affirmed without opinion in June of 1987. See Sanders v. State, 507 So.2d 1230 (Fla. 5th DCA 1987). Judge Cobb dissented with the opinion on the sole ground that in his view, it was unnecessary and unfair to try Sanders in shackles, particularly when he was acting as co-defense counsel.
No collateral attack on this judgment was brought until January 29, 1991, when Sanders filed his pro se motion to correct an illegal sentence pursuant to rule 3.800(a). He argued his convictions for the three crimes involved in this cause violate his double jeopardy rights under the Federal and Florida Constitutions,[6] because they derive from “one criminal incident occurring during the commission of a single criminal episode.” He also argued he was entitled to additional credit for time served on his sentences.
On March 13, 1992, Sanders' motion was amended and supplemented by counsel. Resentencing was sought to exclude points for the necessarily included “lesser offenses” (counts II and III) and to remand for sentencing pursuant to the guidelines, since the written reasons for departure were filed five months after the sentences were orally pronounced. On this appeal, appellant additionally contends that the scoresheet was improperly calculated based on an analysis of his prior record, and that the written reasons given for departure should be stricken because they vary from the trial judge’s oral pronouncements.
*727 After a hearing on April 3, 1992, the trial court denied both motions. It ruled the double jeopardy argument should not be addressed because at the time the sentences were imposed, as well as during the interval for the appeal until the judgments became final, the law then prevailing in Florida allowed convictions for all three crimes based on a single criminal episode. Further, the trial court ruled that Sanders’ double jeopardy claims were time barred pursuant to Rule 3.850, and had been improperly brought pursuant to Rule 3.800(a). It also found all of the sentencing errors claimed by Sanders which could have or should have been raised on his appeal had been waived. It further refused to entertain any challenges to the scoresheet on the ground no error had been demonstrated.
I. DOUBLE JEOPARDY CLAIMS
This court has taken the position that double jeopardy challenges used as a basis to correct an illegal sentence pursuant to Rule 3.800(a) are in reality, attacks on the convictions and not the sentences. State v. Spella, 567 So.2d 1051 (Fla. 5th DCA 1990). In Spella, the trial court vacated a sentence for possession of a firearm because it was a necessary included offense of the second degree murder with a firearm charge. We disagreed with the application of double jeopardy to those convictions, based on the facts of that case, but we did not decide the case on that ground. We held that double jeopardy concerns cannot be addressed in the context of Rule 3.800(a) motions. See also Plowman v. State, 586 So.2d 454 (Fla. 2d DCA 1991); Ferenc v. State, 563 So.2d 707 (Fla. 1st DCA 1990). Any other interpretation would provide an easy escape route around the time-bar for collateral attack on criminal judgments provided by Rule 3.850.[7] In this ease, Sanders is long time-barred from raising his double jeopardy issues by a Rule 3.850 motion. His appeal became final in June of 1987.
However, as in Spella, were we able to address Sanders’ double jeopardy claims, the facts of this case would justify an affirmance of the trial court’s denial. There was authority to find Count II or perhaps Count III was necessarily included in the greater offense of armed, robbery, during the two-year period he could have filed a 3.850 motion.[8] However, much of this case law should not be retrospectively applied.[9] Other case law in place at the time of Sanders’ trial and appeal would have sustained all three convictions and it should be applied to this case.[10]
*728 As the law in Florida now stands, a criminal defendant cannot be convicted of possession, display, use, etc., of a firearm while committing a felony, plus the same felony (here armed robbery and aggravated assault) where the felonies are statutorily enhanced by carrying/use/display of a firearm, as in this case.[11] However, in this case, the armed robbery and aggravated assault were also “enhanced” by Sanders being masked while committing them. Thus, even if current law is applied to this case, there may be no duplication of elements.
Further, although aggravated assault may be a permissive lesser included offense in some cases under current Florida case law (depending upon the allegations of the information and proof at trial),[12] the record in this case provides a factual basis for finding two separate crimes were committed. The evidence at trial showed Sanders robbed McClellan by taking cash from the restaurant safe while carrying a shotgun. He also pointed the shotgun at McClellan and threatened to blow his head off if he sounded any alarm and the police came before he could escape. These two acts took place during a rather lengthy criminal episode, but they were not factually a “single act” involving use of the same firearm.
II. SENTENCING ERRORS
With regard to Sanders’ claim that his “scoresheet” total was too high because all three crimes should not have been included, we reject that argument as an attempt to attack the convictions. We do not reach those issues for the reasons stated above.
Sanders also argues the scores for some of his prior convictions were inaccurate because of record inaccuracies and subsequent events. The first category of claimed error should have been brought to the attention of the trial judge at the time of sentencing.[13] However, the record indicates Sanders and his counsel agreed the prior record and its scoring was accurate. It is too late at this point to raise such issues for errors not apparent on the face of the record. Hammond v. State, 591 So.2d 1119 (Fla. 1st DCA 1992). As to subsequent events which may have reduced the score for one or two crimes included in Sanders’ prior record score, any reduction would be de minimus, and likely not drop Sanders into a lower sentencing bracket. In view of our decision to affirm the departure sentence, any such error is immaterial.
At the time Sanders was sentenced for his crimes in this case written reasons for departure were required. See State v. Jackson, 478 So.2d 1054 (Fla.1985). But, the requirement that written reasons be given “contemporaneously” with pronouncing the sentence had not yet been promulgated. That came with Ree v. State, 565 So.2d 1329 (Fla.1990), which the supreme court said should not be retroactively applied.[14]
Thus, when this court remanded this cause to the trial court for the purpose of supplying written reasons for the departure sentence and to make a scrivener error correction, we were following a procedure that was accepted by all parties as lawful and practical.[15] The case predates Pope v. State, 561 So.2d 554 (Fla.1990) *729 which now requires imposition of a guidelines sentence when the trial court fails to provide written reasons. On remand, Sanders was not present, but he was also not resentenced. The sentences remained unchanged and only written reasons were added in the record. The trial judge, after explaining he had timely prepared written reasons, but they had been lost, then put written reasons on the record nunc pro tunc to date of the original sentencing.
If Sanders objected to any of the reasons given for the departure sentence, he should have done so in connection with that appeal. However, he failed to raise any objection to them, substantively or pro-eedurally, on his direct appeal. Thus, the legal sufficiency of the written reasons are established as “the law of the case,” and they cannot be challenged in a collateral attack via Rule 3.850 or 3.800(a). See Medina v. State, 573 So.2d 293 (Fla.1990); Eutzy v. State, 536 So.2d 1014 (Fla.1988); Raulerson v. State, 420 So.2d 567 (Fla.1982), cert. denied, 463 U.S. 1229, 103 S.Ct. 3572, 77 L.Ed.2d 1412 (1983).
The argument Sanders tries to raise that the written reasons differ from the trial judge’s oral pronouncements is successfully levied at written sentences,[16] but it should not succeed as a method to attack written reasons to depart from the sentencing guidelines. Jackson makes clear that courts must look solely at the written reasons to justify a departure sentence. The oral reasons pronounced by a trial judge at sentencing are often incomplete and not well thought out. Since they are ineffective to sustain a departure sentence, it follows they should not afford a basis to challenge written reasons given for the departure.
AFFIRMED.
GOSHORN, C.J., and COWART, J.A., Senior Judge, concur.

.Rule 3.850(b) provides:
A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time. No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence becomes final unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence, or
(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

. § 812.13(2)(a), Fla. Stat. (1985).

. § 784.021(l)(a), Fla. Stat. (1985).

. § 790.07, Fla. Stat. (1985).

. Feretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

. U.S. Const. Amend. 5; Fla. Const. Art. I, § 9.

. Rule 3.850(b) provides:
A motion to vacate a sentence that exceeds the limits provided by law may be filed at any time.
No other motion shall be filed or considered pursuant to this rule if filed more than 2 years after the judgment and sentence becomes final unless it alleges that
(1) the facts on which the claim is predicated were unknown to the movant or the movant’s attorney and could not have been ascertained by the exercise of due diligence, or
(2) the fundamental constitutional right asserted was not established within the period provided for herein and has been held to apply retroactively.

. See Carawan v. State, 515 So.2d 161 (Fla.1987); Royal v. State, 490 So.2d 44 (Fla.1986); Vance v. State, 545 So.2d 398 (Fla. 1st DCA), rev. denied, 551 So.2d 463 (Fla.1989); Rojas v. State, 543 So.2d 415 (Fla. 5th DCA 1989); Edwards v. State, 529 So.2d 1213 (Fla. 4th DCA), rev. denied, 539 So.2d 476 (Fla.1988); Hogan v. State, 529 So.2d 1127 (Fla. 1st DCA 1987); Neal v. State, 527 So.2d 966 (Fla. 5th DCA 1988); Richardson v. State, 523 So.2d 746 (Fla. 5th DCA 1988); Wright v. State, 519 So.2d 1157 (Fla. 5th DCA 1988).

. But see Wheeler v. State, 344 So.2d 244 (Fla.1977); Martin v. State, 574 So.2d 1118 (Fla. 3d DCA 1990); Gandy v. State, 560 So.2d 1363 (Fla. 1st DCA 1990); Harris v. State, 520 So.2d 639 (Fla. 1st DCA), rev. denied, 536 So.2d 244 (Fla.1988).

. See State v. Glenn, 558 So.2d 4 (Fla.1990); Garcia v. State, 476 So.2d 170 (Fla.1985); Owens v. State, 475 So.2d 1238 (Fla.1985); State v. Baker, 452 So.2d 927 (Fla.1984); State v. Gibson, 452 So.2d 553 (Fla.1984); Collins v. State, 577 So.2d 986 (Fla. 4th DCA 1991); Brown v. State, 569 So.2d 1320 (Fla. 1st DCA 1990); Burton v. State, 522 So.2d 88 (Fla. 5th DCA 1988); Parker v. State, 482 So.2d 576 (Fla. 5th DCA 1986). Only Royal, which was decided just before Sanders’ appeal became final, would have been available to argue the aggravated assault was necessarily included in the armed robbery offense.

. See Cleveland v. State, 587 So.2d 1145 (Fla.1991); State v. McKinnon, 540 So.2d 111 (Fla.1989); Hall v. State, 517 So.2d 678 (Fla.1988); Benedit v. State, 610 So.2d 699 (Fla. 3d DCA 1992); Galban v. State, 605 So.2d 579 (Fla. 3d DCA 1992); Pearson v. State, 603 So.2d 676 (Fla. 3d DCA 1992); Davis v. State, 590 So.2d 496 (Fla. 3d DCA 1991); Goodman v. State, 567 So.2d 37 (Fla. 3d DCA 1990); Graham v. State, 559 So.2d 410 (Fla. 2d DCA 1990); Denmark v. State, 538 So.2d 68 (Fla. 1st DCA 1989); Perez v. State, 528 So.2d 129 (Fla. 3d DCA 1988); Henderson v. State, 526 So.2d 743 (Fla. 3d DCA 1988); McKinnon v. State, 523 So.2d 1238 (Fla. 1st DCA 1988).

. Cave v. State, 613 So.2d 454 (Fla.1993); Taylor v. State, 608 So.2d 804 (Fla.1992).

. See Bundy v. State, 538 So.2d 445 (Fla.1989); Swain v. State, 579 So.2d 842 (Fla. 3d DCA), rev. denied, 591 So.2d 184 (Fla.1991).

. See State v. Lyles, 576 So.2d 706 (Fla.1991).

. Cave v. State, 445 So.2d 341 (Fla.1984); Ellison v. State, 545 So.2d 480 (Fla. 5th DCA 1989).

. See Hargrove v. State, 609 So.2d 177 (Fla. 2d DCA 1992).