462 So.2d 556 (1985)
Daniel BRICKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 83-1524.
District Court of Appeal of Florida, Third District.
January 15, 1985.
*557 Bennett H. Brummer, Public Defender, and Henry H. Harnage, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen., and Calianne P. Lantz, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and DANIEL S. PEARSON, JJ.
HENDRY, Judge.
By this appeal, Daniel Bricker challenges his conviction of bribery [§ 838.015, Fla. Stat. (1981)] and receiving unauthorized compensation for official behavior [§ 838.016(1), Fla. Stat. (1981)].
Bricker was employed by the State of Florida Department of Professional Regulation (Department) as an inspector of beauty salons for licensing requirements and sanitation purposes. In the fall of 1982, the Department issued a delinquency list of beauty salons with expired licenses. One of these salons, Avant Garde, was inspected by Bricker who reported to his supervisor that he thought the owner was trying to bribe him. The supervisor advised Bricker that there was nothing Bricker could do unless somebody gave him something and he could document the transaction. Bricker prepared a memorandum of the incident, wrote up the salon for their violations of the licensing requirements and dropped the matter.
A week later, Bricker investigated another salon, La Coupe Pedrangel (La Coupe), whose owner, Torres, could not produce a salon or a personal beautician license. Several customers were in the salon on the day Bricker called on La Coupe. Bricker initially inquired of Torres where the licenses were, to which Torres replied that Bricker should contact his (Torres') lawyer. Bricker persisted in asking for proof of the licenses, to the point of disrupting business in the salon. As several of the customers were staring at the two men, it was suggested that the two men go into the back room of the shop. There, a discussion of licenses and possible fines ensued wherein each party suspected the other of possible bribery. Bricker told Torres that he could be fined up to $500. Torres replied that he could not afford to be out of the shop and asked Bricker, "if there was some way to take care of it, a couple of hundred dollars or something?" Bricker replied that "he was listening." Torres said that he didn't have sufficient money at that time and Bricker would have to return the following Monday. Bricker then wrote up an inspection report reciting the applicable violations and had Torres sign the report. After Bricker left La Coupe, Torres returned to his customers and told them what had transpired in the back room. Subsequently, Torres informed the state attorney's office that a possible bribery would occur on Monday. At the request of police officers, Torres agreed to be body-wired for the meeting. The officers provided him with *558 an envelope containing five one hundred dollar bills. The investigators then set up a perimeter surveillance for that Monday.
Meanwhile, Bricker had asked an employee of the State of Florida Division of Licensing to run a corporate check on La Coupe. However, Bricker had left for La Coupe on the Monday in question before the results were known. Bricker entered the beauty salon, which was closed, and accompanied Torres to the back room. After much discussion, but without being requested to do so, Torres took out the envelope that the state attorney's office had provided and threw it on the table. Bricker examined the contents and exclaimed, "Five hundred dollars! What are you talking about? I never said that," and returned two of the five one hundred dollar bills. Bricker remained for another thirty minutes and gave Torres additional information regarding new licenses for the shop. Upon exiting the beauty salon, Bricker was arrested. He later met with his supervisors and explained that he had attempted to trap Torres; Bricker was thereafter fired.
At trial the state presented the tape of the body wire as evidence, in addition to testimony of the two customers who were in the La Coupe salon during the initial encounter. Additionally, over objection, the testimony of the owner of the Avant Garde salon was admitted into evidence. In the latter's testimony it was stated that Bricker had received from him a one hundred dollar bribe. Following trial, the jury found Bricker guilty as charged in the La Coupe incident, and he was sentenced to two concurrent four year terms of imprisonment.
Bricker raises two points in this appeal. First, he contends that it was error for the trial court to allow, over objection, evidence of a similar crime (the Avant Garde bribery), which he states only went to prove his criminal propensity, thereby depriving him of a fair trial. Second, he asserts that the trial court erred by admitting, over objection, hearsay testimony as to a crucial issue, thus additionally denying him a fair trial. We agree and reverse.
During opening argument, the state made references to the Avant Garde incident. Subsequently, the state was allowed to present two witnesses, the owners of the Avant Garde salon who testified that they gave Bricker one hundred dollars to not report the license violations. During closing argument, the state again made reference to the Avant Garde salon to show a common scheme by which Bricker received the bribes.
Section 90.404(2)(a), Florida Statutes (1981), provides that:
[s]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
The state codified the holding of Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), which stated that the test for admissibility is relevancy. Id. at 661.
The state urges that the similar criminal act was properly admitted to show a common scheme for Bricker's behavior in the two incidents. The state points to the common elements of both, to-wit: Bricker entered a busy salon and, in front of clients, made requests to inspect licenses; Bricker spoke to the salon operators away from public view; he discussed the same amount of money and/or the $500 fine; and made two separate visits to each salon.
Although collateral crime evidence is admissible to show a common plan, scheme, or pattern of criminality, or to establish identity, it is not admissible where the collateral crime is merely similar to the crime for which the defendant is on trial. Crammer v. State, 391 So.2d 803 (Fla. 2d DCA 1980). The test for admissibility is not that there be greater similarity than dissimilarity between the crimes. Rather, as we stated in Green v. State, 427 So.2d 1036 *559 (Fla. 3d DCA), pet. for rev. denied, 438 So.2d 834 (Fla. 1983), "[t]he similar crimes test is a stringent one: there must be something so unique or particularly unusual about the perpetrator or his modus operandi that it would tend to establish, independently of an identification of him by the collateral crime victim, that he committed the crime charged." Id. at 1038, citing Sias v. State, 416 So.2d 1213 (Fla. 3d DCA), pet. for rev. denied, 424 So.2d 763 (Fla. 1982); Beasley v. State, 305 So.2d 285 (Fla. 3d DCA 1974); Duncan v. State, 291 So.2d 241 (Fla. 2d DCA 1974); Marion v. State, 287 So.2d 419 (Fla. 4th DCA 1974). In this case, as we held in Green, there are no features of the prior incident which are so unique as to be, when compared with the present offense, a "fingerprint type" characteristic. The statute is calculated to prevent the unfairness of convicting the accused on the basis of a showing that he had a propensity to commit a crime such as the one charged. Evidence that the defendant has committed a similar act will frequently prompt a more ready belief by the jury that he might have committed the one with which he is charged, thereby predisposing the minds of the jurors to believe the accused guilty. Waterhouse v. State, 429 So.2d 301 (Fla. 1983). For the reason that the jury will view the irrelevant evidence of the demonstrated criminal activity as evidence of guilt of the crime charged, the admission of such irrelevant evidence is presumed harmful error. Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Violations of the Williams rule may be considered harmless only where proof of guilt is clear and convincing so that even without the collateral evidence introduced in violation of Williams, the defendant would clearly have been found guilty. Adan v. State, 453 So.2d 1195 (Fla. 3d DCA 1984); Clark v. State, 378 So.2d 1315 (Fla. 3d DCA 1980). We do not view the proof of guilt against the appellant in this case as so clear and convincing that the error committed below may be deemed harmless. Accordingly, the conviction must be reversed and the cause remanded for a new trial.
Inasmuch as this case must be retried, we briefly note that appellant's second contention has merit. The testimony of the two customers present at La Coupe at the time of the incident was offered to prove the truth of what transpired in the meeting between Bricker and Torres and, as such, was hearsay testimony. § 90.801(1)(c), Fla. Stat. (1981). In the absence of an applicable hearsay exception, hearsay evidence is inadmissible. Hunt v. State, 429 So.2d 811 (Fla. 2d DCA 1983); § 90.802, Fla. Stat. (1981). Since the outcome of this case turned largely on the comparative credibility of Bricker and Torres, the error of the trial court in allowing the customers to testify as to what Torres said transpired in the back room of the salon cannot be classified as harmless. Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980); Wallace v. Rashkow, 270 So.2d 743 (Fla. 3d DCA 1972).
For the reasons stated, the appellant's conviction is reversed and the cause remanded for a new trial.
Reversed and remanded for a new trial.