479 So.2d 804 (1985)
Alphonso Prosperty SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. AY-203.
District Court of Appeal of Florida, First District.
December 10, 1985.
Rehearing Denied December 10, 1985.
*805 Michael E. Allen, Public Defender, Terry P. Lewis, Sp. Asst. Public Defender, Tallahassee, for appellant.
Jim Smith, Atty. Gen., Henri C. Cawthon, Asst. Atty. Gen., Tallahassee, for appellee.

CORRECTED OPINION
SMITH, Judge.
Appellant was convicted of burglary of a dwelling and sexual battery following a jury trial. He contends that the trial court erred in allowing the state to introduce evidence of collateral crimes during its case-in-chief. Appellant also finds fault with the trial court's decision to depart from the sentencing guidelines in sentencing appellant since, he asserts, the trial court's written reasons for departure were all invalid. We affirm appellant's convictions, but reverse his sentences, and remand for resentencing.

I. FACTS  PRESENT OFFENSES
The victim testified at trial below that she was awakened by a noise in her bedroom sometime between 4:00 and 4:30 a.m. on May 23, 1983. Shortly thereafter, someone leaped up from the bedroom floor, placed a hand across her mouth, and told her not to scream. The assailant informed the victim that she would not be hurt if she cooperated with him. After this warning, the assailant forced the victim to perform oral sex on him. A few minutes later, the assailant covered the victim's face with a pillow, and then began to rummage through her bedroom. During his search, the assailant asked the victim a number of personal questions, including where she was employed, whether she was a student, and whether she played tennis. The assailant then returned his attention to the victim, first performing oral sex on her, and then engaging in nonconsensual intercourse.
Prior to fleeing the premises, the assailant warned the victim not to call the Tallahassee Police Department, informing her that he had a brother on that police force. The victim also testified that the assailant told her he had left her some money on a bedroom dresser, and that he "lived down the street" from her apartment. When asked to give a description of her attacker, the victim testified that he was five-foot six or five-foot seven and chubby, with a protruding stomach.[1] In August, 1983, Tallahassee Police gave the victim a package of six photographs to view in an effort to identify her assailant. Although she was not able to positively identify the attacker out of the photopack, she did pick appellant's photograph as the one that stood out in her mind more than the others. At trial, the victim admitted that she would not be able to make a positive identification of her attacker, but asserted she would be able to identify someone who physically resembled the attacker; she so identified appellant in-court.
The state also introduced at trial certain physical evidence which, it contended, identified appellant as the assailant. For example, Doyle Woods, a fingerprint expert with the Tallahassee Police Department, testified that appellant's fingerprints were found on a window screen which had been removed from the living room window of the victim's apartment. Also, hair samples taken from the victim's clothing, as well as the pillowcase used to cover her eyes, were compared with hair samples taken from appellant, and were found to constitute a match. Finally, Dorthea Mungen, a seriologist from the Florida Department of Law Enforcement, testified that her examination of semen samples taken from certain items of clothing worn by the victim at the time of the attack indicated that appellant's blood type fell within that group of the general population which could have been the source of the semen. The state's hair sample and seriology expert witnesses both testified that they were not able to conclusively tie appellant to the crime via this evidence but, rather, that the evidence *806 failed to exclude appellant as a source of the physical evidence discovered.

II. COLLATERAL CRIME EVIDENCE
The collateral crime evidence to which appellant objected concerned offenses allegedly committed by appellant against two other women.[2] The first woman testified that she was attacked in her apartment (located in the same apartment complex as the present victim) on July 12, 1983. She testified that, after having fallen asleep on her living room couch that night, she was awakened at approximately 2:00 a.m. by a knife-wielding attacker who warned her not to scream. After wrapping a skirt around her eyes, the attacker forced her to perform oral sex on him, then engaged in nonconsensual intercourse with her. After intercourse, the attacker began conversing with her, asking her where she worked, what time she went to lunch, and so forth. The attacker threatened to return if he discovered she had lied to him during their conversation. After the attacker had left, a police search of the apartment revealed that a few dollars cash, as well as the victim's checkbook, were missing. When asked to describe her attacker, she stated that he was five-foot six or five-foot seven, weighed 260 pounds, and had a potbelly stomach. She also testified that she had seen her attacker leave a house one or two blocks from her apartment complex the day after the attack on her; she then identified appellant as the person she had seen. Appellant's fingerprints were found on the window screen of a bedroom window to her apartment.
The second collateral crime witness testified that she was living at a house at 750 California Street, Tallahassee, located near the apartment complex where the two rape victims lived, when she was awakened in her bedroom by a "premonition" prior to dawn on January 12, 1982. Upon awakening, she discovered a strange man standing over her. The man placed his hand over her mouth and told her to be quiet. She responded by reaching under her pillow for a knife, and attempting to stab the attacker. The man reacted by shining a flashlight in her face, and then fleeing. The next day, she discovered all the cash she kept in her bedroom was missing. Appellant's fingerprints were found on a window screen from a kitchen window in her home.

III. TRIAL  VERDICT AND SENTENCE
Appellant did not contest the occurrence of the crime for which he was charged, but instead proffered a mistaken identity defense. To this end, he offered the testimony of an alibi witness, who stated that appellant was, to the best of her recollection, at home in bed at all times relevant to this case. However, the jury rejected appellant's alibi, and convicted him of burglary of a dwelling and sexual battery, as charged. After trial, appellant was sentenced to 15 years on the burglary count and ten years on the sexual battery count, the sentences to run consecutively. This was a departure from the sentencing guidelines recommended sentence of three years, which was based on the primary offense at conviction, burglary of a dwelling.

IV. DISCUSSION ON MERITS
The well-recognized rule regarding the admission of evidence of collateral crimes is that such evidence is admissible to prove a material fact at trial, including rebuttal of a criminal defendant's defense. Smith v. State, 464 So.2d 1340, 1341 (Fla. 1st DCA 1985) (citations omitted). However,
[s]uch evidence is not admissible where the collateral crime is merely similar to the crime for which the defendant is on trial... . [Rather] there must be something so unique or particularly unusual about the perpetrator or his modus operandi that it would tend to independently establish that he committed the crime charged (Citations omitted).
*807 Smith v. State, supra, at 1341. Here, we find that the trial court properly admitted the evidence relating to the July, 1983 collateral crime, the burglary and sexual battery. On the other hand, we are inclined to agree with appellant that the evidence relating to the January 1982 collateral burglary was improperly admitted under the standard recited above. Nevertheless, we find the totality of admissible evidence against appellant sufficiently compelling to render the error complained of harmless.
Concerning the July 1983 crime, we think this evidence contains sufficiently similar particulars as to modus operandi to warrant affirmance of the trial court's decision to admit this evidence. Mason v. State, 438 So.2d 374, 376-377 (Fla. 1983), cert. den. 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Among the similarities of the two incidents were the locale (same apartment complex), timing of occurrence (May 23 and July 12, 1983), method of entry (removal of window screen), manner in which the offenses were conducted (oral, then vaginal sex), assailant engaging the victim in "small talk," and the victim's description of the assailant (five-foot six to five-foot seven, black, with beard and a "potbelly"). While it may be true that none of the similarities, examined individually, could be considered "particularly unusual," we find that consideration of these similarities in the aggregate establishes a "sufficiently unique pattern of criminal activity" rendering evidence of the July, 1983 collateral crime relevant to the issue of identity in the present case. Chandler v. State, 442 So.2d 171, 173 (Fla. 1983). Accordingly, we find no error in the trial court's admission of evidence concerning the July 1983 crimes.
As to the second collateral crime discussed (burglary, January 1982), we are less convinced of the correctness of the trial court's ruling admitting this evidence. At first glance, this offense reveals some of the same similarities, the most easily identifiable similarities being the method of entry, time of night, age and sex of the victim, and geographic location. Given the fact that no sexual battery took place in this incident, and the fact that the attack was aborted, thus leaving to speculation exactly what offense was intended by the intruder, it is questionable whether this crime can be said to have shared sufficient "fingerprint-type characteristics" with the present case. See Bricker v. State, 462 So.2d 556, 559 (Fla. 3d DCA 1985). Both the qualitative and quantitative elements of similarity appear to fall short of that required for admissibility. Regardless of the propriety of the trial court's ruling, however, in light of the otherwise overwhelming evidence of appellant's guilt, we find any error committed in the admission of evidence relating to the January 1982 incident harmless, since the remaining evidence of guilt against appellant was "clear and convincing". McKinney v. State, 462 So.2d 46, 47 (Fla. 1st DCA 1984).

V. SENTENCING GUIDELINES
In Albritton v. State, 476 So.2d 158 (Fla. 1985), the Florida Supreme Court held that a departure sentence based on both valid and invalid reasons should be reversed and the case remanded for resentencing unless the state can show beyond a reasonable doubt that the trial court would have rendered the same sentence even in the absence of consideration of the invalid reasons. In reviewing cases on appeal at the time Albritton was decided, the Supreme Court has approved in principle this court's practice of examining the record on appeal to determine whether a departure from the sentencing guidelines by a trial court may be upheld, even though some of the reasons for departure are invalid, rather than requiring either supplemental briefing by the parties or automatic reversal. See Brooks v. State, 476 So.2d 163 (Fla. 1985), approving 456 So.2d 1305 (Fla. 1st DCA 1984), and Carney v. State, 476 So.2d 165 (Fla. 1985), approving 458 So.2d 13 (Fla. 1st DCA 1984). In this case, after examination of the reasons for departure stated by the trial court, we conclude that the permissible reasons for departure, viewed objectively, *808 are not sufficient for application of the "beyond a reasonable doubt" standard.
In sentencing appellant to fifteen years on the burglary of a dwelling count and ten years on the sexual battery count (as compared with a presumptive guidelines sentence of three years), the trial court checked off six reasons for departure from a list of aggravating and mitigating factors;[3]
1. No pretense of moral or legal justification.
2. A need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility.
3. Is engaged in violent pattern of conduct which indicates a serious danger to society.
4. Emotional, as well as physical trauma, suffered by a victim.
5. A lesser sentence is not commensurate with the seriousness of the [appellant's] crime.
6. Other reasons: State gave notice of intent to pursue enhanced penalty and eschewed same in view of sentence imposed.
The first two reasons listed above have previously been found to be invalid bases for departure where, as here, they are unrelated to any fact of the crimes for which a criminal defendant stands convicted. Brooks v. State, 466 So.2d 1182 (Fla. 1st DCA 1985); Burch v. State, 462 So.2d 548 (Fla. 1st DCA 1985). Likewise, reason number 4 has previously been found invalid where, as here, the trauma to which the trial court refers is inherent in the nature of the offense. Brooks v. State, 456 So.2d 1305 (Fla. 1st DCA 1984), approved 476 So.2d 163 (Fla. 1985). While reason number 3 has previously been found a valid basis for departure, see Dickey v. State, 458 So.2d 1156 (Fla. 1st DCA 1984) and Deer v. State, 462 So.2d 96 (Fla. 5th DCA 1985), rev'd., 476 So.2d 163 (Fla. 1985), the Florida Supreme Court's holding in Hendrix v. State, 475 So.2d 1218 (Fla. 1985), that it is improper to consider a defendant's prior convictions as a basis for departure, implicitly overruled Dickey, and explicitly overruled Deer under circumstances, such as in the case at bar, where the finding of a "violent pattern of conduct" is apparently based factually on past convictions alone, without further explanation. See 476 So.2d at 164, supra; cf., Swain v. State, 455 So.2d 533, 534 (Fla. 1st DCA 1984) (timing of a defendant's commission of various offenses for which he stands convicted valid basis for departure); Mincey v. State, 460 So.2d 396, 398 (Fla. 1st DCA 1984) (same). Reason number 5, on the other hand, would appear to remain a valid basis for departure, since the sentencing guidelines "are not intended to usurp judicial discretion" in sentencing, which remains "an individualized process." Hendrix, supra, at 1220.
The trial court's reliance on a significant number of invalid factors, on the one hand, and the sparsity of supporting particulars for the valid reason for departure, on the other, prevents this court from being able to find beyond a reasonable doubt that the sentences given appellant would have been the same had the court not considered the improper factors. Albritton, supra. Therefore, we are required to reverse appellant's sentences and remand for resentencing. This reversal is without prejudice, however, to the state's right to seek enhanced sentencing under the habitual felony offender statute, Section 775.084, Florida Statutes (1983).[4]Cf. Brady v. State, 457 So.2d 544 (Fla. 1st DCA 1984) (habitual felony offender statute a viable alternative to sentencing guidelines, provided trial court otherwise adequately states reasons for departure).
*809 Convictions AFFIRMED; sentences REVERSED and REMANDED with directions.
MILLS and THOMPSON, JJ., concur.
NOTES
[1] According to the victim, no lights were on in her apartment at the time of the attack, the only light being shed on the interior of the bedroom coming from a street light.
[2] Appellant's pre-trial motion in limine for exclusion of the proffered collateral crime evidence was denied by the trial court.
[3] We reject appellant's assertion that the mere use of a "laundry list" or "check list" by a trial court in delineating its reasons for departure is per se reversible error. Williams v. State, 471 So.2d 630 (Fla. 1st DCA 1985).
[4] Factor number 6 in the list of reasons for departure cannot be considered as a "reason", since the import of this stated reason is that the trial judge's decision to depart motivated the state's decision, whereas the issue for review is what reasons motivated the trial judge's decision.