537 So.2d 982 (1989)
Alphonso P. SMITH, Appellant,
v.
STATE of Florida, Appellee.
No. 72862.
Supreme Court of Florida.
January 5, 1989.
Michael E. Allen, Public Defender and Michael J. Minerva, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., James W. York, Deputy Atty. Gen., Walter M. Meginniss, Director, Criminal Appeals; and Richard E. Doran, Asst. Atty. Gen., Tallahassee, for appellee.
William N. Meggs, State Atty. and Raymond L. Marky, Asst. State Atty., Tallahassee, for amicus curiae.
*983 GRIMES, Justice.
In the course of sentencing appellant, the trial judge declared the sentencing guidelines to be invalid. On appeal, the First District Court of Appeal certified that the trial judge's order required immediate resolution by this Court because the issue presented is of great public importance and has great effect on the proper administration of justice throughout the state. We have jurisdiction pursuant to article V, section 3(b)(5) of the Florida Constitution.
Appellant was convicted of the crimes of burglary of a dwelling and sexual battery that were committed on May 23, 1983. The sentencing took place on March 15, 1984, at which time appellant elected to be sentenced under the sentencing guidelines. The trial court departed from the guidelines recommendation and imposed consecutive sentences of fifteen years for burglary and ten years for sexual battery. The court of appeal held that only one of the six reasons stated for departure was valid. Because the appellate court was unable to find beyond a reasonable doubt that the sentences would have been the same had the trial court not considered the improper reasons, the case was remanded for resentencing. Smith v. State, 479 So.2d 804 (Fla. 1st DCA 1985), review denied, 488 So.2d 831 (Fla. 1986). By the time appellant was resentenced on June 23, 1988, the single departure reason previously upheld had been rendered invalid by this Court's opinion in Scurry v. State, 489 So.2d 25 (Fla. 1986). At this point, rather than sentence appellant within the recommended range of the guidelines, the trial court on motion of the state attorney ruled that section 921.001, Florida Statutes (1983), which created the guidelines, was unconstitutional. The trial court then reimposed the original sentence totalling twenty-five years.[1]
The trial court stated as grounds for its ruling:
2. That the Florida Sentencing Guidelines Act, Section 921.001, Florida Statutes, is violative of Article II, Section 3, of the Florida Constitution. The Sentencing Guidelines Commission performs essentially executive and legislative powers; however, five members of said Commission are judicial officers appointed to the Commission by the Chief Justice. Article II, Section 3, prohibits any person belonging to one branch of government from exercising any powers appertaining to either of the other branches. It is the court's conclusion that by including judicial officers as members of the Commission to perform legislative functions, the Sentencing Guidelines Act violates Art. II, Sec. 3, of the Florida Constitution. U.S. v. Brodie, [686 F. Supp. 941 (D.D.C. 1988)] and U.S. v. Bogle, [693 F. Supp. 1102 (S.D.Fla. 1988)].
3. That the Sentencing Guidelines Act constitutes substantive law and must be enacted into law by the Legislature; however, the guidelines applicable to this case allegedly became law upon approval by the Supreme Court and not the Legislature. The Legislature was without authority to delegate to the judiciary the exercise of legislative powers, Cain v. State [State v. Cain], 381 So.2d 1361, 1367 (Fla. 1980); Husband v. Cassel, 130 So.2d 69 (Fla. 1961) and the Supreme Court under Article V, Florida Constitution, is "powerless to promulgate a rule which had the effect of enacting ... a statute involving ... substantive law." Petition of Florida State Bar Ass'n, etc., [145 Fla. 223] 199 So. 57, 59 (Fla. 1940); Benyard v. Wainwright, 322 So.2d 473 (Fla. 1975).
In order to decide this case, it is advisable to consider the history of the sentencing guidelines. In 1977, the Chief Justice of the Supreme Court appointed a committee to explore alternatives to reduce unreasonable disparities in sentencing. This committee recommended the development and implementation of structured sentencing *984 guidelines. Pursuant to chapter 79-362, Laws of Florida, and with the aid of a federal grant, the Office of the State Courts Administrator conducted a pilot program in four judicial circuits for the purpose of testing the feasibility of developing and implementing sentencing guidelines. Sundberg, Plante and Braziel, Florida's Initial Experience With Sentencing Guidelines, 11 Fla.St.U.L.Rev. 125 (1983). In chapter 82-145, Laws of Florida, the legislature referred to favorable reports of the pilot program and enacted section 921.001 which created the Sentencing Commission to make recommendations for the implementation of sentencing guidelines. Section 921.001 was amended the following year by chapter 83-87, Laws of Florida. Subsection (4) thereof read as follows:
Upon recommendation of a plan by the commission, the Supreme Court shall develop by September 1, 1983, statewide sentencing guidelines to provide trial court judges with factors to consider and utilize in determining the presumptively appropriate sentences in criminal cases. The statewide sentencing guidelines shall be implemented by October 1, 1983, unless the Legislature affirmatively delays the implementation of such guidelines prior to October 1, 1983, and shall be applied to all felonies, except capital felonies, committed on or after October 1, 1983, and to all felonies, except capital felonies and life felonies committed prior to October 1, 1983, for which sentencing occurs subsequent to such date where the defendant affirmatively selects to be sentenced pursuant to the provisions of this act. The commission shall, no later than 45 days prior to the convening of the Legislature in regular session each year, make a recommendation to the members of the Supreme Court, the President of the Senate, and the Speaker of the House of Representatives on the need for changes in the guidelines. Upon receipt of such recommendation, the Supreme Court may within 60 days revise the statewide sentencing guidelines to conform them with all or part of the commission recommendation. However, such revision shall become effective only upon the subsequent adoption by the Legislature of legislation implementing the guidelines as then revised.
On September 8, 1983, the Supreme Court promulgated the sentencing guidelines, including the grid schedules, in the form of rules. In re Rules of Criminal Procedure (Sentencing Guidelines), 439 So.2d 848 (Fla. 1983). In a short opinion, this Court stated:
The Sentencing Guidelines Commission has proposed a rule of criminal procedure to implement sentencing guidelines in order to comply with the action of the legislature in its passage of section 921.001, Florida Statutes (1983). After publication of the proposed rule in The Florida Bar News, the Court received numerous comments and suggestions regarding the proposed rule. The commission considered these suggestions at its final meeting, August 26, 1983, made several changes, and transmitted its final version of the proposed rule to this Court.
We have considered the proposed rule and the comments and suggestions which have been received, and we hereby adopt, as rule 3.701 and form 3.988, the rule and forms appended to this opinion. The sentencing guidelines adopted herein will be effective for all applicable offenses committed after 12:01 a.m., October 1, 1983, and, if affirmatively selected by the defendant, to sentences imposed after that date for applicable crimes occurring prior thereto.
It is so ordered.
Id. at 849. The legislature made a minor amendment to section 921.001 in chapter 84-328, Laws of Florida. Referring to a minor revision to the rules made by the Supreme Court on May 8, 1984, this bill also contained the following language:
Section 1. Rule 3.701 and Rule 3.988, Florida Rules of Criminal Procedure, as revised by the Florida Supreme Court on May 8, 1984, are hereby adopted and implemented in accordance with s. 921.001, Florida Statutes.
Chapter 84-328 became effective on July 1, 1984.
*985 Subsequent thereto, this Court has continued to make revisions to rules 3.701 and 3.988. In chapter 86-273, Laws of Florida, the legislature adopted our revision of December 19, 1985. However, in chapter 87-110, Laws of Florida, the legislature adopted only a portion of our April 2, 1987, revision of the rules. In 1988, the legislature fully approved our April 21, 1988, revision of the rules. Ch. 88-131, Laws of Fla. At the same time, the legislature has also continued to make substantive amendments to section 921.001.
Turning to the reasons given for holding the guidelines invalid, we believe that the concern over the fact that five judges have served on the Sentencing Guidelines Commission can be easily resolved. The trial court rested its ruling upon the separations of power clause contained in article II, section 3, of the Florida Constitution, which reads as follows:
SECTION 3. Branches of government.  The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.
However, contrary to the trial court's analysis, the Sentencing Guidelines Commission was not performing "essentially executive and legislative powers." The commission was simply a body created by the legislature to study the disparity in sentencing and to make recommendations to the Supreme Court. The commission had no legislative or rulemaking authority whatsoever. The Florida Constitution does not prohibit judges from serving on legislative advisory commissions any more than it prohibits legislators from serving on judicial advisory commissions. The trial court's reference to federal cases which have invalidated the federal sentencing guidelines is inapplicable. Unlike the Florida procedure, the guidelines which are promulgated by the Federal Guidelines Commission automatically become law within one hundred eighty days of their submission to Congress unless altered by Congress. 28 U.S.C.A. § 994(p) (West 1988).
In addressing the trial court's alternative ground for invalidation, it is necessary to decide whether the sentencing guidelines are considered substantive or procedural in nature. The reason why this is significant is that the guidelines themselves were first promulgated in 1983, not by the legislature but rather by the Supreme Court, even though the Court was obviously following the intent of the legislature. The Supreme Court is authorized to promulgate rules of procedure. Johnson v. State, 336 So.2d 93 (Fla. 1976). However, only the legislature may enact substantive law. Benyard v. Wainwright, 322 So.2d 473 (Fla. 1975). Therefore, if the guidelines are substantive in nature, they should have been enacted by the legislature rather than the Supreme Court.
In explaining the difference between substance and procedure in the criminal field, this Court has said:
As related to criminal law and procedure, substantive law is that which declares what acts are crimes and prescribes the punishment therefor, while procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished.
State v. Garcia, 229 So.2d 236, 238 (Fla. 1969) (citation omitted).
This distinction was later addressed in Benyard to resolve the conflicting wording in section 921.16, Florida Statutes (1973), and Florida Rule of Criminal Procedure 3.722 concerning the imposition of concurrent and consecutive sentences. In holding that the matter was one of substantive law, the Court observed:
An argument can be made that the manner of the imposition of the sentence is procedural; however, it is our opinion that whether a sentence is consecutive or concurrent directly affects the length of time spent in prison and, therefore, rights are involved, not procedure.
322 So.2d at 475.
On the other hand, judges have traditionally had the discretion to impose any sentences within the maximum or minimum *986 limits prescribed by the legislature. Brown v. State, 152 Fla. 853, 13 So.2d 458 (1943). Thus, it could be said that in promulgating the sentencing guidelines the Supreme Court was simply adopting a rule of procedure to channel the discretion already possessed by sentencing judges. Consistent with this reasoning, this Court held in State v. Jackson, 478 So.2d 1054 (Fla. 1985), that a modification of the sentencing guidelines procedure concerning the counting of a probation violation for purposes of determining a presumptive sentence was merely a procedural change.
However, this Court later found it necessary to recede from Jackson because of the decision of Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), in which the United States Supreme Court ruled that changes in the sentencing guidelines were substantive in nature for purposes of the ex post facto law. Any doubt concerning the issue appears to have been laid to rest in Booker v. State, 514 So.2d 1079 (Fla. 1987). In that case, we held that the 1987 amendment to section 921.001(5), providing that the extent of departure from the guidelines shall not be subject to appellate review, constituted substantive law.
In the final analysis, we are compelled to conclude that the sentencing guidelines, insofar as they limit the length of sentences to be imposed, are substantive in nature.[2] Indeed, the legislature itself has acknowledged as much in the first sentence of section 921.001(1), Florida Statutes (1987), which says:
The provision of criminal penalties and of limitations upon the application of such penalties is a matter of predominantly substantive law and, as such, is a matter properly addressed by the Legislature.
The upshot of our conclusion means that rules 3.700 and 3.988 as originally promulgated by the Supreme Court in 1983 were ineffective unless it can be said that the legislature had properly delegated to the Supreme Court the responsibility for implementing the guidelines in accordance with the broad outlines of the authorizing legislation. It is well settled that the legislature may not, absent constitutional authority to the contrary, delegate its legislative powers to others. Rosslow v. State, 401 So.2d 1107 (Fla. 1987). However, the legislature "may enact a law, complete in itself, designed to accomplish a general public purpose, and may expressly authorize designated officials within definite valid limitations to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." State v. Atlantic Coast Line R., 56 Fla. 617, 636-37, 47 So. 969, 976 (1908).
Legislative delegations of authority to administrative agencies in the executive branch of government to promulgate rules and regulations to implement legislative enactments have often been upheld if accompanied by adequate guidelines. E.g., Clark v. State, 395 So.2d 525 (Fla. 1981); Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976). Purported legislative delegations to the judiciary have been less frequent. Statutes authorizing courts to create drainage districts upon the determination of the existence of certain conditions have been upheld as providing for the performance of administrative or quasi-judicial duties rather than exclusive legislative powers. Burnett v. Greene, 105 Fla. 35, 144 So. 205 (1931); McMullen v. Newmar Corp., 100 Fla. 566, 129 So. 870 (1930). On the other hand, this Court held invalid a statute which specified that certain municipal annexation ordinances would be subject to court approval but which set forth no criteria upon which the court's decision was to be made. We explained:
A statute that leaves to the discretion of a court the determination of the conditions or circumstances on which the change of municipal boundaries will be permitted, as distinguished from one which charges a court with the judicial function of determining whether conditions or circumstances prescribed by the *987 legislature have been met or performed, violates the constitutional provision separating the powers of government into the traditional three branches.
City of Auburndale v. Adams Packing Ass'n, 171 So.2d 161, 163 (Fla. 1965).
More recently, this Court in Askew v. Cross Key Waterways, 372 So.2d 913, 925 (Fla. 1978), again addressed the limitations on the delegation of legislative power when it said:
Accordingly, until the provisions of Article II, Section 3 of the Florida Constitution are altered by the people we deem the doctrine of nondelegation of legislative power to be viable in this State. Under this doctrine fundamental and primary policy decisions shall be made by members of the legislature who are elected to perform those tasks, and administration of legislative programs must be pursuant to some minimal standards and guidelines ascertainable by reference to the enactment establishing the program.
The foregoing analysis leads us to the inescapable conclusion that rules 3.700 and 3.988 as originally enacted in 1983 were invalid. Whether this case is viewed as one involving a legislative power which cannot be delegated or one in which the legislature failed to provide sufficiently ascertainable standards under which the delegation of authority could be sustained, we are convinced that section 921.001 did not legally authorize this Court to promulgate the grid schedules and recommended ranges for sentencing. Even though the legislative and judicial branches were working together to accomplish a laudable objective, the fact remains that by enacting rules which placed limitations upon the length of sentencing, this Court was performing a legislative function. Moreover, while section 922.001 mandated the establishment of rules to reduce the disparity in sentencing, the delegation of authority provided little or no guidance concerning how the schedules were to be prepared or the criteria to be considered in determining the recommended ranges.
Our holding does not mean that the sentencing guidelines are now invalid. When the legislature adopted rules 3.701 and 3.988 in chapter 84-328, the substantive/procedure problem was resolved because the rules then became a statute. This practice has been followed thereafter when the legislature has chosen to adopt new Supreme Court rule changes.
Where does this leave appellant? If the sentencing guidelines were invalid when he was sentenced, presumably, he should have been sentenced under the old procedure in which the trial court had absolute discretion to impose a sentence within the statutory maximum. Under these circumstances, however, he would clearly be entitled to seek parole because the elimination of parole was an integral part of the sentencing guidelines legislation, and we are convinced that it could not be severed from the statute. See Barndollar v. Sunset Realty Corp., 379 So.2d 1278 (Fla. 1979); Small v. Sun Oil Co., 222 So.2d 196 (Fla. 1969).
Ordinarily, this would mean that appellant would be resentenced as if the guidelines had never been enacted. However, appellant is in a unique posture. His original sentence was vacated by the district court of appeal and the trial court was directed to resentence appellant. At this point, while the date of his crime continued to predate the effective date of the guidelines (now determined to be July 1, 1984), the new sentencing took place after the guidelines became effective. Under section 921.001(4)(a), a person whose crime was committed before the effective date of the guidelines but sentenced thereafter may affirmatively select to be sentenced under the guidelines. When appellant appeared for resentencing in 1988, his effort to be sentenced under the guidelines effectively constituted the affirmative selection contemplated by section 921.001(4)(a). Therefore, appellant should have been sentenced under the guidelines which were effective on that date.[3]
*988 We affirm the order of the trial court insofar as it holds that the sentencing guidelines were unconstitutional prior to July 1, 1984. We uphold the validity of the guidelines thereafter. We also vacate appellant's new sentence and remand this case with directions that appellant be resentenced pursuant to the sentencing guidelines that were effective on June 23, 1988. Because the attorney general has asserted that the guidelines calculations were incorrect in the first place, a new guidelines scoresheet should be prepared in order accurately to determine the recommended guidelines sentence. No departure sentence shall be permitted.
It is so ordered.
EHRLICH, C.J., and OVERTON, SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., did not participate in this case.
NOTES
[1] In this appeal, appellant seeks to uphold the validity of the sentencing guidelines. Consistent with his obligation to defend the constitutionality of state laws, the attorney general has also filed a brief in support of the guidelines. In order to have the benefit of the arguments which persuaded the trial court to rule to the contrary, we have permitted the State Attorney of the Second Judicial Circuit to file a brief as amicus curiae.
[2] We do not hold that rules 3.700 and 3.988 in their entirety consist of substantive law. There are certain portions thereof which appear to be procedural in nature and, therefore, properly within the subject of this Court's rulemaking authority. However, the formulation of the grid schedules and the recommended range for sentencing is clearly substantive law.
[3] The ex post facto problem explained by the United States Supreme Court in Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), is inapplicable here because appellant's crimes and original sentencing took place at a time when there were no effective sentencing guidelines. Appellant's first valid affirmative selection to be sentenced under the guidelines occurred on June 23, 1988.