543 So.2d 860 (1989)
Edward GIBBONS, Appellant,
v.
STATE of Florida, Appellee.
No. 87-03510.
District Court of Appeal of Florida, Second District.
May 19, 1989.
James Marion Moorman, Public Defender, and W.H. Pasch, Asst. Public Defender, Bartow, for appellant.
Edward Gibbons, pro se.
Robert A. Butterworth, Atty. Gen., Tallahassee, and David R. Gemmer, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Edward Gibbons appeals the denial of his motion for postconviction relief. We affirm.
Gibbons originally was charged with one count of first degree murder and one count of attempted first degree murder. The indictment alleged that the offenses took place March 28, 1984. In 1985 Gibbons agreed to plead guilty to the reduced charge of second degree murder and to *861 attempted murder as charged. The maximum prison term recommended by the sentencing guidelines was 22 years, and the parties agreed upon concurrent 20-year sentences. Because both offenses involved the use of firearms, concurrent three-year minimum mandatory sentences were included within the terms of the plea agreement.
Two years later Gibbons filed a motion to correct sentence. Specifically, he alleged that the scoresheet used in his case was compiled pursuant to the version of Florida Rule of Criminal Procedure 3.701 in effect at the time of sentencing, rather than that in effect at the time the offense was committed. See Miller v. Florida, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); Dupont v. State, 514 So.2d 1159 (Fla. 2d DCA 1987). Under the applicable rule there would have been no provision for scoring first degree felonies punishable by life; the rule as amended prior to Gibbons' sentencing date included this category of felony and scored such offenses more severely than ordinary first degree felonies. A scoresheet recalculated in the manner urged by Gibbons would call for a sentence of no more than 17 years.
Although it is indeed apparent the wrong scoresheet was used, we find that the error was harmless. The use of a firearm in both offenses reclassifies them as life felonies, not first degree felonies. § 755.087(1)(a), Fla. Stat. (1987). It is clear from the record  particularly since minimum mandatory sentences were imposed pursuant to section 775.087(2)  that Gibbons pled guilty to second degree murder with a firearm and attempted murder with a firearm.[1] The end result, using a revised scoresheet, is a sentence in the 17- to 22-year range, which Gibbons received.
The public defender who argued this case on appeal appears to concede this point. However, he still maintains that Gibbons' sentence is unlawful by virtue of the supreme court's recent opinion in Smith v. State, 537 So.2d 982 (Fla. 1989), wherein the court declared that the initial version of the guidelines (in effect at the time of Gibbons' offenses) unconstitutional. This issue, having arisen during the pendency of Gibbons' appeal, has not been addressed by the trial court.
The defendant in Smith committed his offenses in May, 1983, before the original sentencing guidelines became effective. However, he was not sentenced until March, 1984, and so was entitled to and did elect to be sentenced under guidelines. Not satisfied with the guideline recommendation, the trial court enhanced the sentence, Smith appealed, and the district court reversed. Smith v. State, 479 So.2d 804 (Fla. 1st DCA 1985), rev. denied, 488 So.2d 831 (Fla. 1986). By the time Smith was resentenced, new case law had been decided which invalidated all of the reasons originally relied upon by the trial court for departure. Instead of sentencing within the guideline range, however, the trial court accepted the state's argument that the guidelines were unconstitutional as applied to Smith, and reimposed the original 25-year sentence, presumably now with the right of parole. The supreme court agreed with the constitutional argument, holding that the guidelines did not become effective until July 1, 1984, when the legislature adopted the original 1983 rule. Yet Smith was in a "unique posture" because his original (unconstitutional) sentence had been vacated by the 1985 district court decision. He was entitled to elect a guideline sentence at the 1988 resentencing hearing, and did so. The version of the guidelines in effect at that time should have been used.
Similarly, by 1985, when Gibbons was sentenced in this case, a legislatively-approved version of the guidelines was in effect. The parties agreed to a sentence within the guideline range. Yet, unlike the Smith case, this may not constitute a clear "affirmative selection" of a guidelines sentence because Gibbons never assumed anything but that the guidelines were mandatory. *862 Had he known that he had a choice between a parole-eligible and a non-parolable sentence, conceivably he might have proceeded in a different fashion.
Smith leaves undetermined its applicability to postconviction proceedings such as this one, but this court recently approved the use of Florida Rule of Criminal Procedure 3.800(a) to challenge an "unconstitutional" guideline sentence. Wahl v. State, 543 So.2d 299 (Fla. 2d DCA 1989). However, we do not construe the decision in Wahl as entitling Gibbons to immediate relief. Instead, we would prefer that Gibbons first present this argument to the trial court, because he may decide it is not worth his while to pursue the Smith issue.
Presumably, of the hundreds of defendants who, unknowingly, received "illegal" guideline sentences between October 1, 1983, and July 1, 1984, most have been released from prison or otherwise have little incentive to "correct" their sentences.[2] Wahl is an exception because his sentence was enhanced pursuant to the habitual offender statute and subsequently affirmed on direct appeal. Wahl v. State, 478 So.2d 59 (Fla. 2d DCA 1985).[3] In seeking to vacate that sentence pursuant to Smith, Wahl apparently conceded that he could face the maximum statutory term of imprisonment, but considered the entitlement to parole an acceptable trade-off. Gibbons' situation is further complicated by the fact his sentence was the result of a plea bargain that included a reduction of more serious charges. Should he decide at this point that he is no longer satisfied with that agreement, the state may seek to retry Gibbons on the original charges. We leave it up to Gibbons to decide whether that risk is an acceptable consequence of "correcting" a sentence of twenty years with eligibility for gain-time but not parole.
Affirmed.
RYDER, A.C.J., and LEHAN and THREADGILL, JJ., concur.
NOTES
[1] Reclassification statutes and those imposing minimum mandatory sentences, although both may be predicated upon the offender's use or possession of a firearm, operate independently and not alternatively. Thus no double jeopardy problem arises from the application of both provisions to Gibbons' convictions. See Williams v. State, 517 So.2d 681 (Fla. 1988).
[2] While one technically may not acquiesce in an unlawful sentence; Williams v. State, 500 So.2d 501 (Fla. 1986); a defendant resentenced pursuant to Smith could thereafter request a guideline sentence, using the version of the rule in effect at that time. Smith; Wahl. Often as not he would end up with much the same sentence as before. Thus, a failure to seek correction of a sentence based on Smith is not so much an acquiescence in an unlawful sentence as an implicit recognition that resentencing would be a meaningless gesture  in effect a nunc pro tunc affirmative selection of guidelines.
[3] Wahl's sentence was affirmed prior to Whitehead v. State, 498 So.2d 863 (Fla. 1986), which disapproved reliance upon the habitual offender statute to depart from a guideline recommended sentence. Whitehead was later determined not to be retroactive, preventing Wahl from seeking postconviction relief on this ground. McCuiston v. State, 534 So.2d 1144 (Fla. 1988).