# GORDON v FLORIDA PAROLE COMMISSION

## Case No. 89-2180

Second Judicial Circuit, Leon County

October 30, 1989

### APPEARANCES OF COUNSEL

**William A. Belz,** Florida Institutional Legal Services, Inc., for petitioner.

**William L. Camper,** General Counsel and **Bradford L. Thomas,** Assistant General Counsel, Florida Parole Commission, for respondent.

### OPINION OF THE COURT

PHILIP J. PADOVANO, Circuit Judge.

*ORDER DENYING PETITION FOR WRIT OF MANDAMUS*

Jane Gordon, an inmate in the custody of the Florida Department of Corrections, has filed a petition for writ of mandamus to compel the Florida Parole Commission to grant her an interview for the purpose of establishing a presumptive parole release date. For the reasons that

follow, the Court has determined that Ms. Gordon is not entitled to relief and that her petition for writ of mandamus must be denied.

The petitioner entered a plea of guilty to the crime of second degree murder. She elected to be sentenced under the sentencing guidelines, and on October 21, 1983 a circuit judge in Jacksonville sentenced her to a twenty-five year prison term. The recommended range under the sentencing guidelines was seven to twelve years, but the trial judge submitted a separate written order detailing his reasons for departure.

The Florida Parole Commission has declined to interview the petitioner Gordon for the purpose of establishing a presumptive parole release date. The Commission has taken the position that the petitioner is ineligible for parole since she was sentenced under the sentencing guidelines. See § 921.001(10) Fla. Stat. (1987); *Czarnecki v State,* 468 So.2d 303 (Fla. 5th DCA 1985); *McCuiston v State,* 462 So.2d 830 (Fla. 3d DCA 1984). There is no dispute that the Commission has also declined to grant parole interviews for all other inmates sentenced under the sentencing guidelines, including those inmates who elected and received guideline sentences prior to the legislative adoption of the sentencing guidelines on July 1, 1984.

On April 3, 1989, the petitioner Gordon sought relief by mandamus in this Court contending that she had a right to consideration for parole and that the Parole Commission had a duty to grant her an interview. The petition is in the nature of a class action suit in that it seeks relief, not only for Ms. Gordon, but also on behalf of all other similarly situated inmates in the Department of Corrections.

In an order entered on July 19, 1989, this Court directed the Parole Commission to show cause why the petition should not be granted. Thereafter, on August 18, 1989, the Commission filed a motion to quash the order to show cause contending that the petitioner is barred by a "procedural default" because the petitioner cannot pursue the petition in this Court before she pursues a post-conviction remedy in the sentencing court.

This Court has jurisdiction to issue a writ of mandamus to review discretionary acts of the Parole Commission in determining an inmate's eligibility for parole. *Moore v Florida Parole and Probation Commission,* 289 So.2d 719 (Fla. 1974). The power of the Court to review the discretionary acts of the Parole Commission by mandamus has been recognized, specifically, as one of the exceptions to the general rule that mandamus only lies to compel the performance of ministerial duties. *See Roberson v Florida Parole and Probation Commission,* 444 So.2d 917 (Fla. 1983). Since the Court has jurisdiction over the subject

matter, the court has treated the Parole Commission's motion to quash the order to show cause as a response on the merits.

Although it is conceivable that an extraordinary writ petition could be treated as a class action lawsuit, see *Turner v Wainwright*, 379 So.2d 148 (Fla. 1st DCA 1980), the petitioner in this case has failed to establish and define the existence of the alleged class. Therefore, the Court declines to treat the petition of Jane Gordon as a petition filed on behalf of all other similarly situated inmates.[1]

The essence of the petitioner's contention on the merits is that she is entitled to parole consideration because she was sentenced during a period of time in which the sentencing guidelines were unconstitutional. She was sentenced on October 12, 1983, and in *Smith v State*, 537 So.2d 982 (Fla. 1989), the Supreme Court held that the sentencing guidelines were unconstitutional prior to July 1, 1984 when they were adopted by the Florida legislature. Based on the decision in *Smith*, the petitioner contends that her guideline sentence is invalid, and that the Parole Commission must consider her as a candidate for parole.

In contrast, the Parole Commission contends that the *Smith* decision merely gives the petitioner the right to go back to the trial court to request resentencing under Fla.R.Crim.P. 3.850. Counsel for the Commission has advanced both legal and practical reasons supporting this contention. The legal argument is that the Parole Commission lacks the authority to invalidate the petitioner's guideline sentence, and, unless the trial court actually resentences the petitioner without using the guidelines, she is not eligible for parole consideration. As a practical matter, the Commission argues that the petitioner should not be entitled to obtain the best of both worlds by retaining a guideline sentence at the same time she is seeking parole eligibility.

At the outset, the Court has serious reservations about the authority of the Parole Commission to determine, on its own, that a sentence in a given case is unconstitutional. Article V of the Florida Constitution has no authority to ignore the sentence of a circuit court simply because it appears by more recent precedent that the sentence is subject to constitutional challenge. It is not necessary to make such a broad ruling, however, in deciding the outcome of this case.

Given the nature of the error in applying the sentencing guidelines in

---

[1] It makes little different, in any event, whether this Court treats the petition as one filed on behalf of a class. If the order of this Court is reversed, and the petitioner obtains the relief she is seeking, the Parole Commission will certainly abide by the precedent set by the appellate court even though the mandate of the court would only govern this case.

this case, it is clear that the petitioner must first seek to correct the error and seek resentencing in the circuit court in Duval County before she can demand an interview for parole. Although there is a *constitutional* defect in the petitioner's sentence, it cannot be said that the sentence is *fundamentally* defective. Notwithstanding the application of the guidelines, the petitioner received a sentence that was within the statutory limit for the crime of second degree murder. If the petitioner is resentenced, there would be nothing to prevent the trial judge from imposing the same twenty-five year sentence without using the guidelines. For the reasons, it appears that the defect created by the improper use of the guidelines makes the sentence "voidable" but not necessarily "void."

The petitioner relies on the following passage of the opinion in *Smith* in which the Supreme Court explained that an inmate receiving a guideline sentence would be entitled to parole consideration:

If the sentencing guidelines were invalid when [the defendant] was sentenced, presumably, he should have been sentenced under the old procedure in which the trial court had absolute discretion to impose a sentence within the statutory maximum. Under these circumstances, however, he would clearly be entitled to seek parole because the elimination of parole was an integral part of the sentencing guidelines legislation, and we are convinced that it could not be severed from the statute. *Smith* at 987.

This passage cannot be interpreted, however, to suggest that a defendant who was sentenced during the period of time in which the guidelines were invalid is *automatically* entitled to parole consideration, even if he does not contest his erroneous sentence in the trial court. In fact, the court suggested a contrary conclusion in the next paragraph:

Ordinarily, this would mean the [defendant] would be *resentenced* as if the guidelines had never been enacted. (emphasis added) *Smith* at 987. Indeed, although *Smith* was decided only last January, at least one defendant has interpreted the decision as one that grants a right to correction of the sentence by filing a post-conviction motion in the trial court. See *Wahl v State,* 543 So.2d 299 (Fla. 2d DCA 1989).

During the oral argument in this case the petitioner contended that it would be a waste of judicial resources to require all of the inmates in Ms. Gordon's position to go through post-conviction proceedings. After all, the Supreme Court has clearly decided that guideline sentences prior to July 1, 1984 are unconstitutional, and any inmate sentenced prior to July 1, 1984 would be absolutely entitled to relief. This argument overlooks several points.

64

First, the statute may wish to seek resentencing without the application of the guidelines before a defendant applies for parole. The state has a right to appeal an illegal sentence, § 924.07(5) Fla. Stat. (1987); *State v Row,* 478 So.2d 430 (Fla. 5th DCA 1985); *State v Pilcher,* 443 So.2d 366 (Fla. 5th DCA 1983), as well as a sentence that is an illegal departure from the sentencing guidelines. § 924.07(9) Fla. Stat. (1987); *State v Govan,* 494 So.2d 302 (Fla. 4th DCA 1986); *State v Villalove,* 481 So.2d 1303 (Fla. 3d DCA 1986). Although not mentioned by either party,[2] the state also has a right to seek post-conviction relief under Fla.R.Crim.P. 3.800(a) to correct an illegal sentence. *Grice v State,* 528 So.2d 1347 (Fla. 1st DCA 1988).

If the state were to file a motion to correct the sentence under Fla.R.Crim.P. 3.800(a), there would be nothing to prevent the trial judge from imposing a harsher sentence than that originally imposed under the guidelines. In this situation the implications of *North Carolina v Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed. 2d 656 (1969) do not come into play because there is no possibility that the increased sentence would be a punishment for the exercise of the defendant's rights. *Beech v State,* 436 So.2d 82 (Fla. 1983). If it only when the *defendant* takes some action to correct an illegal sentence that the principles of *North Carolina v Pearce,* are applicable.[3]

It may be a benefit to the petitioner that she could become eligible for parole because the guidelines were improperly applied, but, on the other side of the coin, it is a detriment that the sentence itself is no longer subject the restrictions imposed by the guidelines. If this Court were to rule that *Smith* entitles the petitioner to automatic parole consideration without the need for further action in the sentencing court, then the state would be deprived of its right to correct the sentence.

The Court is also persuaded by the Parole Commission's argument that automatic eligibility without further action in the trial court would enable the petitioner, and other inmates in the same situation, to obtain the best of both worlds by retaining the benefits of both the sentencing guidelines and parole. The sentencing guidelines operate to *restrict* the

---

[2] The arguments assume that the post-conviction remedy would be under Fla.R.Crim.P. 3.850, but it is also possible that the state or defense could file the motion under Fla.R.Crim.P. 3.800(a) which provides that the court may at any time correct an illegal sentence.

[3] Even then, there is not necessarily a presumption of vindictiveness sufficient to prevent a harsher sentence on resentencing. See *Alabama v Smith,* — U.S. — 109 S.Ct. 2201 (1989).

range of sentences within the statutory maximum. Though the sentence in this case was illegal, the petitioner may have actually deprived a benefit from the illegality: i.e. the trial judge may have imposed a harsher sentence had he not been restrained by the guidelines.

The petitioner may hold a contrary belief about the sentence that would likely have been imposed without the guidelines. Perhaps the trial judge would have imposed a sentence *below* the range. That is a possibility this court acknowledges, but it seems to add even more force to the argument that this case and others like it should be resolved in the trial courts. The Parole Commission should not be required to look behind a sentence simply because the Commission knows that it contains an error that might be corrected in the trial court.

In conclusion, the petitioner is not entitled to relief by mandamus because there are other remedies that must be pursued before the Parole Commission can be forced to consider her for parole. The petitioner can correct the error in applying the sentencing guidelines by filing a post-conviction motion in the sentencing court, and that must be done before this court can issue a writ of mandamus directing the Parole Commission to grant her a parole interview. Accordingly, the petition for writ of mandamus is denied.

DONE and ORDERED in chambers at Tallahassee, Leon County, Florida, this 30th day of October, 1989.